[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2009
THOMAS K. KAHN
CLERK

No. 08-16039
Non-Argument Calendar
_____

Agency Nos. A096-101-139,
A096-101-140

JOSE MARIA BELTRAN LOZANO,
CLARA INES BELALCAZAR MORALES,
JUAN JOSE BELTRAN BELALCAZAR,
JUAN MANUEL BELTRAN BELALCAZAR,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 29, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Jose Maria Beltran Lozano, his wife, Clara Ines Belalcazar, and their two children, Juan Jose Beltran and Juan Manuel Beltran,[1] natives and citizens of Colombia, petition for review of the Bureau of Immigration Appeals' ("BIA's") decision affirming the Immigration Judge's ("IJ's") order finding them removable and denying their application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment of Punishment ("CAT"). For the reasons set forth below, we deny the petition.

## I.

In October 2000, Lozano filed an application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the CAT, asserting that he had been persecuted on account of his political opinion. The Department of Homeland Security subsequently served Lozano with a notice to appear, charging him with removability for remaining in the United States longer than permitted, pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

In his asylum application, Lozano explained that he and his family were forced to leave Colombia, because members of the National Liberation Army ("ELN") persecuted them on account of Lozano's political activity with the

---

[1]The asylum applications of Belalcazar and the two children were derivatives of Lozano's application. Accordingly, any discussion of Lozano's claims on appeal is also applicable to Belalcazar and the children.

Colombian Conservative Party. As a member of the Conservative Party, Lozano volunteered 8 to 10 hours a week, teaching adult reading and writing classes. Lozano stated that, in 1998, the ELN began infiltrating El Saladito, the town in which he lived, specifically targeting two families who were important members of the Conservative Party and forcing them to sell their property. Lozano stated that one Sunday in late July 2000, a person he had never seen before stopped by his house to deliver a note sent by a man named Jaime Garavito, one of Lozano's former students who had become a member of the ELN. The letter stated that the ELN intended to kidnap Lozano's two sons and were considering killing Lozano. After receiving the threatening letter, Lozano moved his family to the city of Cali, but he began receiving threatening phone calls from the ELN at his home and office in Cali.

Lozano appeared before the IJ with counsel and conceded removability. At the hearing, Lozano testified to the following. When Lozano and his family lived in El Saladito, Lozano volunteered on behalf of the Conservative Party, teaching 3-hour reading and writing classes to 30 to 35 adults every Saturday. Lozano also informed local residents about the Conservative Party's plans and campaigned for two Conservative Party candidates, one of whom unsuccessfully ran for President. The flyer Lozano received from Garavito contained a general message, stating that the ELN would kidnap or kill anyone in the area belonging to the Conservative

3

Party, and a handwritten note, stating that he, Lozano, was included in the threats. A few days before Lozano received the flyer, a government official told local residents to stop all meeting activities, because there had been "a lot of nervousness" and "focus on official activities." In July of 2000, Lozano moved his family to the town of Cali, but after moving, he received threatening phone calls at both his home and his office, and he began sleeping at a friend's house. Lozano filed a police report after receiving the threatening calls, but he left for the United States before being asked to discuss the report with authorities.

The IJ denied Lozano's application for asylum, finding that it was filed more than one year after Lozano entered the country and Lozano failed to establish changed or exceptional circumstances that would excuse the late filing. The IJ found Lozano's testimony to be credible and determined that the threats contained in the flyer were motivated at least in part by Lozano's political activities. However, the IJ found that the threats in the flyer and the threats received via telephone did not rise to the level of persecution. It found that Lozano also failed to establish that he, more likely than not, would be subject to persecution upon returning to Colombia, because Lozano and his family had been outside the country since 2000 and did not possess such notoriety that, upon returning, they would be sought out or persecuted by the ELN.

The BIA upheld the IJ's decision, finding that Lozano's claim for asylum

4

was untimely and the threatening flyer and phone calls from the guerillas did not rise to the level of persecution. It noted that Lozano had been away from Colombia for over eight years and failed to show that he was still active in the Conservative Party or would conduct himself in a way that would attract the attention of the guerillas. For these reasons, the BIA denied Lozano's claim for withholding of removal and for CAT relief.

## II.

We review only the BIA's decision, except to the extent that the BIA expressly adopts the IJ's opinion or reasoning. Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001). Here, the BIA did not expressly adopt the IJ's order, so we review the BIA's order. When considering a petition to review a BIA final order, we review legal issues de novo. Hernandez v. U.S. Att'y Gen., 513 F.3d 1336, 1339 (11th Cir. 2008). The BIA's factual findings are reviewed under the substantial evidence test. Al Najjar, 257 F.3d at 1283-84. Under this test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1284. "To reverse a factual finding by the BIA, [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001).

Under the INA, an alien shall not be removed to his country of origin if his

life or freedom would be threatened in that country on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). "The alien bears the burden of demonstrating that it is more likely than not [that] []he will be persecuted or tortured upon being returned to h[is] country." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (internal quotations omitted). An alien applying for withholding of removal may satisfy his burden of proof in two ways. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). "First, an alien may establish 'past persecution in [his] country based on a protected ground.'" Id. Second, if the alien does not establish past persecution, he bears the burden of showing that it is more likely than not that (1) he would be persecuted in the future on account of one of the five enumerated grounds; and (2) he could not avoid this future threat to his life or freedom by relocating, if under all the circumstances it would be reasonable to expect relocation. Id., citing 8 C.F.R. § 208.16(b)(2); see also Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (holding that an alien who has not established past persecution may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground).

Neither the INA nor the regulations define "persecution," but we have indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation . . . [m]ere harassment does

6

not amount to persecution." Sepulveda, 401 F.3d at 1231 (internal quotations omitted). "Not all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000). For example, menacing telephone threats do not rise to the level of past persecution. Sepulveda, 401 F.3d at 1231.

### III.

As an initial matter, Lozano, in his brief before this Court, offers no argument regarding his claims for asylum and CAT relief. Accordingly, he has abandoned these issues and we will address only the BIA's denial of withholding of removal. See id. at 1228 n.2 (noting that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned"). Lozano concedes that he had not established past persecution; thus, he has also abandoned any claim of past persecution and the only question we must address is whether Lozano, more likely than not, would be persecuted in the future on account of his political opinion. See id., 8 C.F.R. §208.16(b)(2).

Lozano has failed to show that it is more likely than not that he would be persecuted upon returning to Colombia. First, Lozano never indicates, in his written statement or his testimony before the IJ, that he is still involved in politics or intends to resume his political activities in the future. Furthermore, Lozano has been living outside of Colombia for over eight years. Although Lozano was active in politics when he lived in Colombia, he did not act as a party leader or organizer,

7

but instead volunteered as a reading and writing teacher, and distributed information to locals about the Conservative Party. Based on these facts, it does not appear that Lozano was such an important figure in the Conservative Party that he would be singled out by the ELN upon his return to Colombia eight years after he left. Lozano provided no evidence that the ELN continued to search for him after he departed the country. Moreover, as noted above, Lozano concedes that the harassment he suffered while in Colombia did not rise to the level of persecution, and he offers no explanation as to why the ELN's actions against him would escalate upon his return. Because Lozano has failed to show that he, more likely than not, would be persecuted upon returning to Colombia, the issue of relocation is irrelevant. See 8 C.F.R. § 208.16(b)(2). Accordingly, we deny his petition for review.

**PETITION DENIED.**

8