[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13977
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 03, 2009
THOMAS K. KAHN
CLERK

Agency No. A97-191-180

FNU ZULKIFLI,

Petitioner-Appellant,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 3, 2009)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Fnu Zulkifli ("Zulkifli"), a native and citizen of Indonesia, petitions for review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") order dismissing his application for asylum and withholding of removal.[1] This appeal presents two issues: (1) whether we have jurisdiction to review the BIA's determination that Zulkifli failed to file a timely application for asylum; and (2) whether substantial evidence supports the determination that Zulkifli did not meet the burden required for withholding of removal.

I.

Conceding that he did not file his application for asylum within one-year of his arrival into the United States, Zulkifli argues that the BIA erred by finding that he failed to establish one of the exceptions, the existence of "changed circumstances." The Government responds that we lack jurisdiction to review the denial of Zulkifli's petition. "We review subject matter jurisdiction *de novo*." *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003) (per curiam).

---

[1] Zulkifli has abandoned his claim for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT") because he does not challenge the IJ's denial on appeal. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

An alien may apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An application filed after one year may be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified . . . ." 8 U.S.C. § 1158(a)(2)(D). Section 1158(a)(3) provides: "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." 8 U.S.C. § 1158(a)(3).

Under our current precedent, § 1158(a)(3) divests us of jurisdiction to review the determination that an asylum applicant filed an untimely application or failed to establish changed or extraordinary circumstances to excuse his untimely filing. *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1217 (11th Cir. 2002) (per curiam) (holding that federal courts lack jurisdiction to review the Attorney General's decision as to timeliness of an asylum request); *see also Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007) (providing that § 1158(a)(3) "divests us of jurisdiction to review decisions of whether an alien complied with the one-year time limit, or whether extraordinary circumstances were present to

3

justify untimely filing of the asylum application"). Thus, we lack jurisdiction to review the BIA's determination that Zulkifli failed to demonstrate that changed conditions justified his untimely filing.[2] *See* 8 U.S.C. § 1158(a)(3). Accordingly, we dismiss for lack of jurisdiction Zulkifli's petition for review with respect to his asylum claim.

## II.

Zulkifli argues that he is eligible for withholding of removal because, if he returns to Indonesia, he has a well-founded fear of future persecution because of his conversion to Christianity and marriage to an ethnic Chinese woman. Specifically, Zulkifli asserts that his family has threatened to punish him according to the traditional law by putting him "under the culture court" whereby he would be "thrown into the jungle with feet and hands bounded or stoned to death." Further, Zulkifi offers evidence that Muslim extremist groups in Indonesia persecute Christians and interracial marriages like his, and the Indonesian government has not provided in the past adequate protection for its citizens. The

---

[2] Although § 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (2005), granted courts jurisdiction over constitutional claims or questions of law, we have held that the Act did not vest us with jurisdiction to review a finding that an asylum application was untimely or that extraordinary circumstances justified an untimely filing, because these were discretionary or factual determinations. *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir. 2005) (per curiam) ("The timeliness of an asylum application is not a constitutional claim or question of law covered by the Real ID Act's changes.").

Government responds that substantial evidence exists to support the IJ's and BIA's finding that Zulkifli is not entitled to relief.

We review only the BIA's decision, except we also review the IJ's decision where the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, we review the IJ's decision as well." *Id.* Because in this case the BIA adopted the reasoning of the IJ, we review both decisions of the IJ and the BIA.

We review the IJ's and BIA's factual determinations under the substantial evidence test and will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007) (quotation omitted). Under the substantial evidence test, we can reverse a finding of fact by the IJ or BIA "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We review the IJ's and BIA's legal determinations *de novo*. *Mejia*, 498 F.3d at 1256.

To obtain withholding of removal, an alien seeking withholding of removal must show that his "life or freedom would be threatened in [his] country [of

5

origin] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The alien bears the burden of demonstrating that it is 'more likely than not' [he] will be persecuted or tortured upon being returned to [his] country." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (quoting *Sepulveda*, 401 F.3d at 1232). "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, [and] . . . [m]ere harassment is not persecution." *Ruiz*, 479 F.3d at 766 (quotations omitted). The standard for withholding of removal "is more stringent than the 'well-founded fear of future persecution' required for asylum." *Tan*, 446 F.3d at 1375 (citation omitted).

An alien may satisfy his burden of proof for withholding of removal in two ways. First, an alien may establish past persecution based on a protected ground. *Id.* Past persecution creates a rebuttable presumption that he has a well-founded fear of future persecution and shifts the burden to the government to show changed conditions in the country or the ability to avoid a future threat through relocation. *Id.* Second, an alien may establish that it is more likely than not that he would be persecuted upon removal due to race, religion, nationality, membership in a particular social group, or political opinion. *Id.* However, an alien "must demonstrate that his or her fear of persecution is subjectively genuine

6

and objectively reasonable." *Al Najjar*, 257 F.3d at 1289. An alien cannot demonstrate that he more-likely-than-not would be persecuted on a protected ground if the alien could avoid a future threat by relocating to another part of the proposed country of removal. *Tan*, 446 F.3d at 1375.

Because Zulkifli did not allege, and no evidence exists, that he suffered past persecution, he was not entitled to a presumption that he had a well-founded fear of future persecution if returned to Indonesia. *See* 8 C.F.R. § 208.13(b)(1). The IJ and the BIA determined that Zulkifli's conversion to Christianity and marriage to a woman of Chinese ethnicity did not render it "more likely than not" that Zulkifli would be persecuted if returned to Indonesia. Having reviewed the record and the parties' briefs, we discern no error. Substantial evidence supports the determination that Zulkifli did not establish an inability to avoid future persecution. Notably, the IJ relied on evidence that the Indonesian government extends "official status" to the Christian faith, recognizes some Christian holy days, and the Indonesian constitution guarantees a citizen "the right to worship according to his or her own religious belief." Further, the IJ found that large numbers of ethnically Chinese individuals live in peace in several areas of the country, and the Indonesian government "officially promotes racial and ethnic tolerance." We agree that the record evidence does not compel a decision contrary

7

to the IJ's decision and therefore deny Zulkifli's petition with respect to his withholding of removal claim.

III.

Because we lack jurisdiction to review the determination that Zulkifli failed to file a timely asylum application and conclude that substantial evidence supports the BIA's decision affirming denial of Zulkifli's application for withholding of removal, we dismiss Zulkifli's petition with respect to the asylum claim and deny the petition with regard to the withholding of removal claim.

**DISMISSED IN PART and DENIED IN PART.**