EDENFIELD, District Judge,
concurring in part and dissenting in part:
I concur in the denial of the petition as to Kazemzadeh’s claims of past persecution and a well-founded fear of future persecution based on his political opinion. I dissent from the majority’s vacatur and remand on Kazemzadeh’s claim of a well-founded fear of persecution based on his religion. In remanding, the majority has focused on two very subtle and specific considerations that it believes the Board and the Immigration Judge failed to address. First, the majority concludes that the Board failed to consider whether enforcement in Iran of the law against apostasy is rare only “because apostates practice underground and suffer instead that form of persecution to avoid detection and punishment.” Second, after summarizing the past encounters between Kazemzadeh and his family and the regime, the majority concludes that, although the Board and the Immigration Judge considered this evidence with regards to Kazemzadeh’s past political persecution claim, “this evidence was also relevant to Kazemzadeh’s application for asylum based on religious persecution.” Thus, the Immigration Court should have considered whether the regime’s “heightened interest makes it more likely that Kazemzadeh’s religious conversion will be discovered and become a basis for persecution.”
I cannot agree with the remand of the case on either of these grounds. First, we typically do not require Immigration Judges or the Board to explicitly address every particular consideration in their opinions. See Tan v. U.S. Att’y Gen., 446 F.3d 1369, 1374 (11th Cir.2006) (“Where the Immigration Judge has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.”) (quotations, citation, and alterations omitted). In reaching her conclusion here, the Immigration Judge appears to have fully considered all of the relevant facts surrounding Kazemzadeh and his family’s past run-ins with the government and also the current conditions for Christians in Iran. Remanding this case because the Immigration Judge and the Board failed to explicitly address certain subtleties is contrary to the deference we traditionally afford Immigration Courts in reaching the ultimate decision.
Additionally, I disagree with the majority’s adoption of the Seventh Circuit’s decision, Muhur v. Ashcroft, 355 F.3d 958, 960-61 (7th Cir.2004), that having to practice religion underground to avoid punishment is itself a form of persecution. I do not believe that the adoption of the rule is necessary in this case. The Board concluded, “To the extent that the respondent *1363 argues on appeal that there is a pattern or practice of persecution in Iran against people who convert to Christianity, we find that the respondent failed to establish that such a pattern or practice exists ....” In reaching this conclusion, the Board appears to have considered the conditions in Iran for all Christian converts (both those practicing openly and those practicing underground) based on the evidence that was before it. First, the country report cited by the majority supports the Board’s conclusion, as the small number of arrests of and violence against openly-practicing apostates that it describes were not necessarily based on the individuals’ apostasy, but on other grounds. The majority describes the unconfirmed report on a Web site that “unidentified persons killed a man who had converted to Christianity more than 10 years earlier.” Additionally, the report states that “several Christians” in the northern part of the country were “reportedly arrested” in May and June 2004, and a Protestant Church was raided in September 2004, but only the minister was imprisoned (for three years), and he was charged not with apostasy, but with “deceiving the armed forces” for failing to disclose his conversion to Christianity. Moreover, the country report states that according to some estimates there were “approximately 100,000 Muslim-born citizens who converted to Christianity” living in Iran at the time. It seems implausible that the near-total absence of documented persecution of apostates in Iran is due simply to the fact that the 100,000 Christian converts are able to keep their Christianity under wraps. The country report itself demonstrates the rarity of persecution against openly practicing apostates in Iran and the virtual absence of apostasy charges and convictions in recent years. It was therefore reasonable for the Board to conclude that no pattern or practice of persecution against Christian converts had been demonstrated in this case.[1] As a result, the necessity of practicing underground is not of concern in this case, and the Seventh Circuit’s rule is therefore irrelevant and should not be adopted here.
Finally, as to the second ground, I do not see how the regime’s past interest in Kazemzadeh’s (and his family’s) political beliefs would lead to an interest in and discovery of his current religious beliefs, and therefore I do not think the Immigration Court should be expected or required to specifically address this possibility. The Immigration Judge and the Board acknowledged Kazemzadeh’s previous encounters with the regime, and they both emphasized the fact that no one in Iran— not even Kazemzadeh’s parents — is aware of his conversion. As the Immigration Judge and the Board both generally considered this possibility, I do not think we should now require a more explicit assessment.
*1364 Nonetheless, as the majority has ordered that the case be remanded, I believe there is an additional issue that should be addressed on remand. The Immigration Court should make a clear credibility determination — be it favorable or adverse— before it addresses the considerations set forth by the majority. In round one of these proceedings (presently under review), no clear credibility determination was rendered, likely because the Board was able to dispose of the case on other grounds. On remand, however, credibility could be a dispositive determination, and it therefore should be explicitly addressed.
Immigration Judges “must make clean determinations of credibility.” Yang v. U.S. Att’y Gen., 418 F.3d 1198, 1201 (11th Cir.2005) (quotation and citation omitted). In this case, although the Immigration Judge never directly addressed the issue of credibility, she commented throughout her order on the numerous questionable aspects of Kazemzadeh’s religious conversion. First, she stated that his “inability to explain what communion is ... seemed inconsistent with any significant involvement with the religion” since communion is a “central aspect of Christianity.” She also noted that he attended weekly Bible classes less than once per month, and opined that he should be making “the effort to attend as many of those classes as possible in order to learn a religion for which he alleges that he’s willing to risk his life.” After noting that Kazemzadeh decided to become a Christian approximately two months after he began attending church, the Immigration Judge stated that “it was[] [not] clear how much he knew in those two months that [led] him to make a life-time commitment that would put him at odds with his family and with his country.” She also pointed out factual inconsistencies between Kazemzadeh’s testimony and that of his pastor, and she expressed suspicion about the authenticity of documents he provided as evidence of his conviction and his expulsion from the university he attended in Iran. Finally, in her conclusion, the Immigration Judge noted that the swiftness of Kazemzadeh’s acceptance of Christianity “does not evidence a lifetime commitment.”[2]
In its own decision, the Board stated in a footnote that, “although the Immigration Judge expressed problems with some of [Kazemzadeh’s] testimony, she did not make an adverse credibility finding.” Despite the Board’s interpretation, the majority takes quite a leap and concludes that “neither the Board nor the Immigration Judge discredited Kazemzadeh’s testimony or other evidence about his conversion” and that “the Board found that Kazemzadeh’s conversion to Christianity is genuine,” simply because there was no express determination that he was not credible. The majority cites De Santamaria v. U.S. Att’y Gen., 525 F.3d 999 (11th Cir.2008), and Mejia v. U.S. Att’y Gen., 498 F.3d 1253 (11th Cir.2007), for the proposition that the lack of an adverse credibility determination by the Immigration Judge forecloses any suggestion that Kazemzadeh was anything “less than credible.” Neither of those eases, however, directly held that such a presumption is the rule in this circuit. Instead, both De Santamaría and Mejia cited to Yang, 418 F.3d at 1201, as the alleged authority for such a credibility presumption. First, De Santamaria *1365 stated in a footnote that, “Where an [Immigration Judge] fails to explicitly find an applicant’s testimony incredible and cogently explain his or her reasons for doing so, we accept the applicant’s testimony as credible.” 525 F.3d at 1011 n. 10. Mejia likewise held that the applicant’s entire testimony should be accepted as credible since the Immigration Judge did not make a specific adverse credibility finding. 498 F.3d at 1257. In reaching those determinations, the Court in both De Santamaría and Mejia relied heavily (if not exclusively) upon a particular passage from Yang: “Though the [Immigration Judge] made a reference to Yang’s claims as ‘a ridiculous fabrication,’ and stated that her testimony was ‘extremely inconsistent and [made] absolutely no sense whatsoever,’ we are not persuaded that this was an explicit finding that Yang’s testimony was not credible.” De Santamaria, 525 F.3d at 1011 n. 10 (citing Yang, 418 F.3d at 1201); Mejia, 498 F.3d at 1257 (same). In my view, however, Yang does not mandate the strict presumption applied by the Court in De Santamaria and Mejia. I believe that, in Yang’s progeny (i.e., De Santamaria, Mejia, and the case at hand), the Court has been overstating Yang’s case-specific credibility remark as standing for a mandatory general presumption that Yang in no way announced.
In Yang, this Court faced similar facts to the current case: despite the fact that the Immigration Judge referred to the alien’s claims as a “ridiculous fabrication” and stated that her testimony was “extremely inconsistent and made absolutely no sense whatsoever,” this Court found that the Immigration Judge had not explicitly found the alien’s testimony not credible. Id. at 1201. The Court, however, did not hold that the testimony was therefore deemed credible, but instead avoided the issue of credibility, explaining, “[T]he thrust of the [Immigration Judge’s] analysis focuses on the insufficiency of Yang’s evidence, rather than on any credibility issues. Thus, for purposes of our review, we will assume that any credibility determinations by the [Immigration Judge] were not dispositive of the appeal.” Id. (emphasis in original).
Thus, I think the more accurate interpretation of the Immigration Judge’s findings is that, despite raising numerous concerns pertaining to Kazemzadeh’s credibility, she declined to make a credibility determination because she chose to dispose of the case on the basis of insufficient evidence, instead of on credibility grounds. The Board’s decision therefore also focused on the conclusion that, even if Kazemzadeh is a Christian, his claim would not succeed, as he had not shown that anyone' in Iran is aware or would become aware of his conversion and he also had not shown that there is a pattern or practice of persecution in Iran against converts to Christianity. Thus, rather than relying on cases that perpetuate an inaccurate interpretation of a previous case, the majority should take this opportunity to course-correct its interpretation and application of Yang. The Court should therefore assume simply that “any credibility determinations by the [Immigration Judge] were not dispositive of the appeal,” 467 F.3d at 1296, and not that “the Board found that Kazemzadeh’s conversion to Christianity is genuine” or that “neither the Board nor the Immigration Judge discredited Kazemzadeh’s testimony or other evidence about his conversion.” As a result, the Board should make a clear credibility determination on remand, especially since, in light of the majority’s required considerations, the credibility determination could have a dis-positive effect.

. The majority cites Antipova v. U.S. Att’y Gen., in which this Court stated that "the [Immigration and Nationality Act] and the related regulations governing withholding of removal do not require applicants who have faced persecution on account of ... religion ... to avoid signaling to others that they are indeed ... adherents of a certain religion.” 392 F.3d at 1264-65. In Antipova, however, it was clear from the country report and other evidence that openly practicing Judaism frequently led to persecution. Id. at 1262-63. In fact, the applicant in that case had suffered past persecution due to her open practice of Judaism. Id. As a result, the need to practice underground was an extremely relevant issue in that case. In the present case, however, the Board reached a conclusion that there was no pattern of persecution against any apostates, and Kazemzadeh presented no persuasive evidence to the contrary. Thus, the issue of underground practice need not be considered.

. The timing of Kazemzadeh's swift conversion is also noteworthy. He testified that he first began visiting Christian church services in September 2005, which was approximately one month prior to the expiration of his visa, and he converted shortly thereafter, in early November 2005.