[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 19, 2010
JOHN LEY
ACTING CLERK

No. 09-12157
Non-Argument Calendar

_____

Agency No. A098-914-420

YOBER RAFAEL TURCIOS-AVILA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 19, 2010)

Before EDMONDSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Yober Rafael Turcios-Avila, a native and citizen of Honduras, has filed a petition for review from the Board of Immigration Appeals's ("BIA") and the Immigration Judge's ("IJ") decisions denying him withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231 ("INA"). Turcios-Avila argues that the BIA and the IJ erred in determining that he was not a member of a particular social group within the meaning of the INA and, as a result, that he did not demonstrate that he was persecuted or would be subject to future persecution based on a protected ground. For the reasons set forth below, we deny the petition.

**I.**

Turcios-Avila arrived in the United States at Laredo, Texas, on April 14, 2005. On this same day, the Department of Homeland Security ("DHS") served Turcios-Avila with a notice to appear ("NTA"), charging him with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States who had not been admitted or paroled. In September 2006, Turcios-Avila appeared before an IJ and conceded removability.

In April 2007, Turcios-Avila filed an application for asylum, withholding of removal, and relief under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). He conceded that he was filing his application outside the one-year limitations period for asylum

claims. In his application, Turcios-Avila alleged that he had suffered past persecution and feared future persecution based on his membership in a particular social group. He explained that he had been harassed by a violent gang, the "Maras," because they wanted him to join their gang. Turcios-Avila further explained that he did not want to join their gang because he did not wish to commit violent and anti-social acts. He supported his application with a personal statement.

Before Turcios-Avila's removal hearing, the parties submitted various documents into the record. These exhibits included a 2006 report issued by the U.S. Department of State entitled: "Youth Gang Organizations in Honduras." According to this report, 41% of the Honduran population was under the age of 15. Criminal gangs were a serious and pervasive problem in Honduras, and the Maras was one of the most prevalent gangs. The gangs targeted adolescents between the ages of 13 and 20 for recruitment, and increasingly targeted children as young as eight or nine years old. The report noted that, while the gangs could exert "strong recruiting pressure," membership in a gang was "overwhelmingly voluntary." Outside of prison, forced recruitment was rare. While gangs occasionally threatened or assaulted those who refused to join them, it was unlikely that a gang would search outside of their usual zone of activity for an individual who refused to join them.

The exhibits also included Turcios-Avila's affidavit, as well as an undated letter addressed to Turcios-Avila from his mother. In this letter, Turcios-Avila's mother stated that two of the Maras had recently visited her home and told her that they wanted to kill Turcios-Avila.

In May 2008, Turcios-Avila, represented by counsel, appeared at a removal hearing before the IJ. At this hearing, Turcios-Avila testified that, as a teenager, he had experienced harassment by the Maras in his hometown, Mantel. As he was walking to school one day, a group of approximately 25-30 Maras approached him and demanded that he join their group. This occurred an additional seven or eight times during 2000. The Maras almost always approached Turcios-Avila as he walked to school, and he always refused to join their group. In the middle of that school year, the Maras again approached Turcos-Avila as he was walking to school with two friends. The Maras told them that they had "[run] out of options" and had to join their group. After Turcios-Avila and his friends refused, several of the Maras beat one of Turcios-Avila's friends. Turcios-Avila was punched in the stomach. As a result of this incident, Turcios-Avila did not return to school for the remainder of the school year, and did not leave home except to attend church with large groups of people.

Turcios-Avila did not again experience significant harassment by the Maras until 2004. In 2004, the Maras threatened to kill him, and took items from him

4

such as money and his school uniform shirt. Turcios-Avila took these threats seriously because he knew that the Maras had robbed one of his neighbors and raped the neighbor's daughter. Turcios-Avila encountered the Maras four additional times in 2004, and moved to Juticalpa in early 2005 because he feared that his life was in danger in Mantel.

Turcios-Avila had another encounter with the Maras in Juticalpa. As he was walking home from school with two friends in March 2005, a group of Maras approached them and demanded that they join the gang. The Maras beat them, and hit Turcios-Avila with a steel pipe, which scarred him. The Maras also hit one of Turcios-Avila's friends on the head with the steel pipe, causing him to sustain an open head wound. As a result of this incident, Turcios-Avila decided to flee to the United States. Turcios-Avila further testified that, since he left Honduras, his 17-year-old brother no longer left his home due to his fear of the Maras. Turcios-Avila believed that, if he were to return to Honduras, the Maras would find him and kill him because he would not join them.

On cross-examination, Turcios-Avila explained that, after he arrived in the United States, the Maras had twice approached his mother at her home. They asked her where Turcios-Avila was, and, when his mother refused to give them this information, they threatened to kill her and Turcios-Avila.

The IJ rendered an oral decision denying relief. In her decision, the IJ found that Turcios-Avila's asylum claim was untimely because he failed to file his application within one year of his arrival in the United States. Addressing his withholding of removal claim, the IJ found that Turcios-Avila did not establish that he had been harassed based on membership in a particular social group. The IJ found that a social group must be "narrowly defined," and defined a social group for purposes of the INA as "a voluntary association . . . . [based on] an innate characteristic that is so fundamental to the identities or consciences of its members that its members either cannot or should not be required to change it." Applying these principles, the IJ determined that an individual's resistance to cooperating with a gang does not make that person a member of a social group for purposes of the INA. Thus, the IJ found that, even if Turcios-Avila were credible, there was no nexus between any past persecution Turcios-Avila may have suffered and a protected ground under the INA. Finally, the IJ also denied his claim for CAT relief, finding that the record did not indicate that Turcios-Avila was in danger of suffering harm at the hands of the Honduran government.

Turcios-Avila appealed to the BIA, arguing, among other things, that the IJ erred in determining that he did not establish a nexus between past persecution and a protected ground under the INA. The BIA affirmed the IJ's decision, agreeing with the IJ that Turcios-Avila failed to establish by clear and convincing evidence

6

that he filed his asylum application within one year of his arrival in the United States. The BIA found that, even if Turcios-Avila were credible, he failed to demonstrate past persecution based on a protected ground. The BIA also agreed with the IJ that Turcios-Avila's refusal to join a gang did not establish that he belonged to a particular social group within the meaning of the INA. The BIA reasoned that the group of young men sought for gang recruitment was: (1) not defined with sufficient particularity to delineate its membership; (2) not socially visible; and (3) not marked by an "immutable characteristic," such as "sex, color, or kinship ties." The BIA also found that, to the extent Turcios-Avila feared returning to generally dangerous conditions in Honduras, his fear of civil unrest that affected the country as a whole did not entitle him to withholding of removal. Finally, the BIA agreed that the record did not indicate that Turcios-Avila would likely be tortured by, or with the acquiescence of, the Honduran government. Thus, the BIA also denied CAT relief.

## III.

Where the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al-Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA expressly adopts the IJ's reasoning, we review both the BIA's and the IJ's decisions. *Id.* Here, the BIA did not expressly adopt any part of the IJ's decision, but it affirmed the IJ's

7

decision and agreed with much of her reasoning in its own opinion. As a result, to the extent that the BIA agreed with the IJ's reasoning, we review both the BIA's and the IJ's decisions.[1] *See Al-Najjar*, 257 F.3d at 1284. To the extent that the BIA's and the IJ's decisions were based on a legal determination, our review is *de novo*. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254 (11th Cir. 2006).

Under the INA, an alien shall not be removed to a country if his life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). In order to prevail on a claim that he is eligible for withholding of removal, a petitioner must present "specific, detailed facts" that demonstrate that he has good reason to fear that he will be persecuted based on a protected ground. *Ruiz*, 440 F.3d at 1257-58 (quotation omitted). An alien must demonstrate a nexus between past or future persecution and a protected activity by showing that the protected ground, "at least in part," motivated his past persecution or would motivate future persecution. *Rodriguez-Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (holding that an alien must demonstrate a nexus

---

[1] In his petition, Turcios-Avila does not discuss the BIA's and the IJ's denial of his claims for asylum and CAT relief. Accordingly, he has abandoned any argument regarding these issues, and we do not discuss them here. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (noting that the petitioner abandoned an argument by failing to raise it in her initial brief).

between her persecution and a protected ground); *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (holding that the alien's persecution must, at least in part, be based on a protected ground). To demonstrate the required nexus, the petitioner must present specific facts that show a well-founded fear that because of a statutory factor, he will be singled out for persecution, or that he "is a member of, or is identified with, a group that is subjected to a pattern or practice of persecution." *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir.2008). An asylum applicant may not show merely that he is a member of a particular social group, but must show that he was persecuted because of his membership in that social group. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992).

Because Congress has not defined what constitutes a particular social group under the INA, we defer to the BIA's definition of this term as long as it is not arbitrary, capricious, or clearly contrary to law. *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1196 (11th Cir. 2006); *see also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The BIA has defined a particular social group as one that shares a "common, immutable characteristic that is fundamental to its members' individual identities or consciences," and we have held that this definition is reasonable. *Castillo-Arias*, 446 F.3d at 1195-96 (quotation and alterations omitted). Examples

9

of a "common, immutable characteristic," include sex, color, kinship ties, or, in certain circumstances, "a shared past experience such as former military leadership or land ownership." *Id.* at 1193. The common characteristic must be something other than the risk of persecution. *See id.*

In addition, we have held that, "[E]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerrillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz*, 440 F.3d at 1258.

Here, the BIA and the IJ did not err in finding that Turcios-Avila was not a member of a "particular social group" within the meaning of the INA. Young Honduran men who refuse to join gangs constitute only an inchoate group that lacks an immutable characteristic that is fundamental to its members' individual identities or consciences. Notably, it appears that this group would share only the risk of persecution, as young men who oppose gang membership could come from a wide variety of backgrounds and hold a wide variety of beliefs, and could oppose gang membership for different reasons. Moreover, it appears that Turcios-Avila's proposed group would present problems with numerosity. In addition, Turcios-Avila's claim, at its heart, appears to be a claim that he fears acts of private violence if he were returned to Honduras. Such a claim does not warrant

10

withholding of removal. Because Turcios-Avila did not demonstrate that he was a member of a particular social group, he also failed to demonstrate that he likely would be subjected to persecution based on a protected ground if he were returned to Honduras. Accordingly, the BIA and the IJ did not err in denying his claim for withholding of removal, and we deny the petition.

**Conclusion**

Based upon our review of the record and the parties' briefs, we deny the petition.

**PETITION DENIED.**