[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11614
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 3, 2011
JOHN LEY
CLERK

Agency No. A088-150-529


AROLDO GEREMIAS JUAREZ JUAREZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 3, 2011)

Before EDMONDSON, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Aroldo Geremais Juarez Juarez, a native and citizen of Guatemala, petitions

for review of the Board of Immigration Appeal's ("BIA's") decision affirming the Immigration Judge's ("IJ's") denial of his application for asylum and requests for withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").

On appeal, Juarez argues that the BIA erred in ruling that his asylum application was untimely because he established extraordinary circumstances excusing him from failing to meet the one-year deadline. He also argues that he has faced past persecution based on protected grounds: He says he and his family have been attacked by dangerous "Maras" gangs because of their Christian religion and because of his membership in a social group that has expressed opposition to those gangs. According to Juarez, the cumulative violence and threats he suffered at the hands of the gangs amount to persecution and indicate that he would face similar persecution upon removal to Guatemala. Finally, Juarez argues that the Guatemalan government acquiesced to the violence Juarez faced by failing to protect him and other citizens from the violence and threats of Maras gangs.

For the reasons set forth below, we dismiss in part and deny in part.

DISCUSSION

2

1.    *Application for Asylum*

To be granted asylum, an alien must demonstrate by clear and convincing evidence that he filed the asylum application within one year after his arrival into the United States. *See* 8 U.S.C. § 1158(a)(2)(B). Notwithstanding the time limit, an alien's application for asylum may be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application . . . ." *Id.* § 1158(a)(2)(D). However, "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an asylum application. *See id.* § 1158(a)(3). Accordingly, this Court has concluded that § 1158(a)(3) divests us of jurisdiction to review a time-bar decision, including determinations as to whether an alien has complied with the one-year time limit or established extraordinary circumstances that would excuse an untimely filing. *See Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (citation omitted).

Juarez entered the United States in 2001. He filed his application for asylum in 2006. Juarez argues in detail the merits of his asylum claim, asserting that he was persecuted by gangs in Guatemala because he is a Christian and a

member of a social group that has expressed opposition to gang practices. He also argues that this Court should excuse his untimely filing because Juarez entered the United States alone at age 18, unfamiliar with the country and unable to speak English. The BIA concluded that Juarez's asylum application was time-barred because he did not file it within one year of arriving in the United States, as required by § 1158(a)(2)(B). Because we lack jurisdiction to review the BIA's time-bar decision, we cannot consider whether Juarez has established extraordinary circumstances to excuse his failure to file his application for asylum within one year of arrival to the United States. *See Mendoza*, 327 F.3d at 1287. Therefore, we dismiss his petition for review of the BIA's determination as to his asylum claim.

2. *Application for Withholding of Removal*

Juarez next argues that the BIA erred by failing to withhold his removal.[1] He argues that he has a well-founded fear that his and his family members' lives or freedom would be threatened upon his return to Guatemala because of violence and threats from gangs that have targeted them in the past.

We review legal determinations *de novo*, *id.*, and factual determinations

---

[1] We review only the decision of the BIA where the BIA did not expressly adopt the IJ's decision. *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1199 (11th Cir. 2009) (per curiam).

under the highly deferential substantial-evidence test, whereby we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (internal quotations omitted) (citation omitted).  We "view the record in the light most favorable to the [BIA]'s decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027.  We may reverse the BIA's factual determinations "only when the record *compels* a reversal." *Id.* (emphasis added).

To qualify for withholding of removal under the INA, an alien must show that his life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3)(A).  Moreover, the alien has the burden of proving that he "more likely than not" will be persecuted upon returning to his country. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (internal quotations omitted) (citation omitted).  Persecution is an "extreme concept. " *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation marks omitted) (citation omitted), and poses a more stringent standard of proof than does an asylum claim. *See id.* at 1232.

Here, the BIA adopted the IJ's conclusion that Juarez failed to demonstrate

5

a nexus between past mistreatment by gangs and a protected ground. Despite the fact that Juarez was confronted as he was leaving religious events and faced derision about his religious affiliation—and once, even had his Bible vandalized—the gang members seem to have harassed, robbed, and beaten him on multiple occasions in attempts to recruit him, not specifically on account of Juarez's religion or membership in a particular social group. We base our conclusion on the fact that Juarez testified that the gangs harassed him because they wanted him to join them, and on the fact that several letters he submitted to prove past persecution lacked any reference to religious motivation for the gang activity.

In any event, although the evidence of the beatings and threats he endured might *permit* a conclusion of future mistreatment based on his religion or social group, it does not compel such a conclusion. *See Sepulveda*, 401 F.3d at 1231. Substantial evidence supports the BIA's determination that Juarez is ineligible for withholding of removal. Thus, we deny Juarez's petition as to his claim for withholding of removal under the INA.

3.    *Request for Relief Under CAT*

Juarez also fails to show that, more likely than not, he would be tortured by, or with the acquiescence of, an official of the Guatemalan government. To

establish eligibility for CAT relief, an alien must demonstrate that he would more likely than not be tortured if he were removed to the designated country. 8 C.F.R. § 208.16(c)(2). "Torture" is defined as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* § 208.18(a)(1).

Here, Juarez did not present any evidence that he would be tortured by, or with the acquiescence of, the Guatemalan government officials. Although he asserts that the Guatemalan government has failed to protect its citizens from the Maras gangs, the evidence he has presented relates to non-governmental gangs that engage in criminal activities. He has failed to show a causal nexus between the gangs' criminal harassment of him and a protected ground under CAT. Several of the letters he submitted as evidence of past persecution lack any reference to his religion or social group; they stated only that he lived under constant threats, that his mother's house was robbed, and that he had been involved in altercations. Though a letter from the youth coordinator of his church

7

stated that Juarez was attacked because of his religion, it also mentioned that the youth coordinator was able to elude conflict through prayer and avoiding confrontations.  Therefore, the record does not compel a conclusion that Juarez would more likely than not be tortured by, or with the acquiescence of, Guatemalan government officials upon repatriation.  The BIA correctly concluded that Juarez is ineligible for CAT protection.  We therefore deny his request for relief under CAT.

**DISMISSED IN PART AND DENIED IN PART.**