[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 5, 2010
JOHN P. LEY
ACTING CLERK

_____

No. 09-12391
Non-Argument Calendar

_____

Agency No. A098-877-659

MIGUEL POL MELETZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 5, 2010)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Miguel Pol Meletz, proceeding *pro se*, petitions for review of the BIA's decision affirming the IJ's order finding him removable and denying his application for asylum, withholding of removal, and CAT relief. For the reasons set forth below, we dismiss Meletz's petition in part, and deny the petition in part.

**I.**

A January 5, 2006 Notice to Appear charged Meletz, a native of Guatemala, with entering the United States on an unknown date without being admitted or paroled. On December 8, 2006, Meletz filed an application for asylum and withholding of removal, asserting that he had fled Guatemala because he had been persecuted on the basis of his race, and that he entered in United States in July 2005. Meletz explained that he had been persecuted by government officials and landowners in Guatemala, because he and his father worked in cane fields for little pay. Meletz explained that when he and his father went on strike, the landowners threatened to harm their family if they did not return to work. He stated that one day he was beaten by men with covered faces.

At a November 16, 2007 hearing before the IJ, Meletz testified that he was born in Guatemala and is of Mayan descent. He stated that, since he was 13 years old, he had worked for a sugar plantation in Guatemala for very little pay, and that he and the other workers eventually protested the low wages. Meletz testified about three separate encounters he had in Guatemala. First, in 2001, Meletz was in

2

San Jose, Guatemala, on his way home from work, when his former boss and another individual told him that he had to go back to work or suffer consequences.

On a second occasion when Meletz was on his way home, three individuals confronted him. One individual was wearing civilian clothing, while another was wearing a police uniform, and both men had masks on their faces. The men grabbed him and beat him with a flashlight, causing a cut on his face. Meletz believed that the men attacked him because his former boss wanted him to return to work. After this incident, Meletz moved to another village, called Estanzuela, but after moving, he was confronted a third time while on his way home from work. He stated that the men approached him and wanted to hurt him, but he ran away. Meletz "heard them say the next time, we will kill you if you [have] not gone back to work." In 2002, about two weeks after this last incident, Meletz left Guatemala and came to the United States. Meletz stated that his asylum application, which stated that he entered the United States in June 2005, was incorrect. Meletz testified that his family remained in Guatemala, although his father later came to the United States. He stated that he was afraid to return to Guatemala because he was afraid that certain people would find him and kill him.

On cross-examination, Meletz testified that he believed the men who attacked him during the first and second encounters were sent by his former boss. He stated that his mother and brothers still resided in Estanzuela. On recross,

3

Meletz testified that men in Estanzuela had been asking his brother "when is your brother coming back." He stated that his brother does not know these men.

The IJ issued an order denying Meletz's applications for asylum, withholding of removal, and CAT relief. The IJ found that Meletz failed to establish eligibility for asylum, because the three encounters he described "d[id] not equate to persecution" and there was no evidence of political activity or governmental interference at the sugar plantation. He also determined that Meletz's testimony was "not reliable as to establishing a claim for asylum," because Meletz could not identify the individuals that confronted him and "failed to report on at least one occasion a threat against his person." Furthermore, the IJ noted that there was no indication that Meletz's injuries were inflicted as a result of any political opinion which he had. Finally, the IJ pointed out that Meletz did not attempt to live in other areas of Guatemala before moving to the United States and that Meletz's family continued to live safely in Guatemala. The IJ concluded that Meletz had not suffered past persecution and that there was no nexus between Meletz's political opinions and the alleged persecution. With respect to Meletz's credibility, the IJ found that Meletz "largely told the truth," but "ha[d] not created a credible claim for relief."

The IJ also stated that he could not "find that the respondent filed a timely application for asylum upon entering the United States," because the IJ could not

4

substantiate the exact date of his entry into the country. The IJ determined that Meletz failed to offer a sufficient explanation for his failure to file a timely application. Based on these findings, the IJ determined that Meletz was eligible only for withholding of removal and CAT relief, but that he was not entitled to either of these remedies.

Meletz, now proceeding *pro se*, filed a notice of appeal with the BIA, stating that he had been beaten because he and other farmers participated in a strike and that his life would be in danger if he returned to Guatemala. In his brief to the BIA, Meletz simply stated, "I was paid very poorly at the finca. The workers organized and our employers t[h]reatened us to death. I am afraid for my life. Please grant me asylum."

The BIA affirmed the IJ's decision for the reasons set forth in the IJ's opinion, although it noted that "it is not clear whether the Immigration Judge analyzed the respondent's applications under the REAL ID Act of 2005 . . . which applies to the instant case because the respondent first filed his application after May 11, 2005." The BIA noted that any such error was harmless, because Meletz's "claim clearly lacks a showing of persecution and a nexus between any purported persecution and a protected ground." The BIA noted that Meletz "failed to submit any meaningful argument addressing the Immigration Judge's merits determinations," and that it was "unpersuaded as to the actual merits of his

5

appeal."

## II.

We review only the BIA's decision, except to the extent that the BIA expressly adopts the IJ's opinion or reasoning. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283-84 (11th Cir. 2001). Here, the BIA "affirm[ed] the Immigration Judge's decision for the reasons stated therein." Accordingly, we review the IJ's order.

### *Jurisdiction*

The government argues that Meletz failed to exhaust his administrative remedies or abandoned all of his claims with respect to his application for asylum, withholding of removal, or CAT relief. It also asserts that we lack jurisdiction to review the IJ's determination that Meletz's asylum application was time-barred.

We review our subject matter jurisdiction *de novo*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). We lack jurisdiction under 8 U.S.C. § 1158(a)(3) to review decisions of the Attorney General regarding whether an alien timely filed an application for asylum, or established extraordinary circumstances to excuse an untimely filing. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th Cir. 2007); *see also* 8 U.S.C. § 1158(a)(3).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United*

6

*States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.  *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

"When an appellant fails to offer argument on an issue, that issue is abandoned."  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).  Furthermore, a court may not review a final order of removal unless "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1).  The exhaustion requirement is jurisdictional and precludes review of a claim that was not presented to the BIA.  *See Fernandez-Bernal v. U.S. Att'y Gen.*, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).  The regulations governing appeals from the IJ to the BIA require that a notice of appeal "must specifically identify the findings of fact, conclusions of law, or both, that are being challenged."  8 C.F.R. § 1003.3(b).  However, a petitioner is not required to address all of the IJ's reasons for denying a claim; instead, he is simply required to argue "the core issue" before the BIA.  *See Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1229 n.3 (11th Cir. 2008).

Pursuant to 8 U.S.C. § 1158(a)(3), we lack jurisdiction to consider any claims relating to Meletz's asylum application, because the IJ found that Meletz's asylum application was untimely, and this determination is not subject to judicial

7

review.  *See* 8 U.S.C. § 1158(a)(3); *Sanchez Jimenez*, 492 F.3d at 1231.  In addition, Meletz failed to present any argument in his appellate brief or to the BIA regarding his application for CAT relief.  Therefore, Meletz has failed to exhaust his administrative remedies and abandoned any claims with respect to his application for CAT relief.  *See Sepulveda,* 401 F.3d at 1228 n.2; 8 C.F.R. § 1003.3(b); *Fernandez-Bernal*, 257 F.3d at 1317 n.13.  Accordingly, to the extent that Meletz challenges the IJ's denial of his applications for asylum and CAT relief, we dismiss his petition for review.

Meletz has preserved his arguments with respect to his claim for withholding of removal by stating in his notice of appeal to the BIA that he was beaten while in Guatemala and that his life would be in danger if he returned to the country.  Furthermore, in his *pro se* opening brief submitted to us, Meletz asserts that he "made out sufficient arguments supported by . . . case law [with respect to his] . . . Withholding of Removal [claim]."  Because these statements, construed liberally, preserve Meletz's claim that the IJ erred in denying his application for withholding of removal, we now address this claim.  *See Tannenbaum*, 148 F.3d at 1263 (noting that we construe *pro se* pleadings liberally); *Montano Cisneros*, 514 F.3d at 1229 n.3 (noting that a petitioner is simply required to argue "the core issue" before the BIA).

*Withholding of Removal*

8

When considering a petition to review an IJ's final order, we review legal issues *de novo*. *Hernandez v. U.S. Att'y Gen.*, 513 F.3d 1336, 1339 (11th Cir. 2008). The IJ's factual findings are reviewed under the substantial evidence test. *Al Najjar*, 257 F.3d at 1283-84. Under this test, we must affirm the IJ's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1284.

Under the INA, an alien shall not be removed to his country of origin if his life or freedom would be threatened in that country on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). "The alien bears the burden of demonstrating that it is more likely than not [that] []he will be persecuted or tortured upon being returned to h[is] country." *Sepulveda*, 401 F.3d at 1232 (quotation omitted). An alien applying for withholding of removal may satisfy his burden of proof in two ways. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006). "First, an alien may establish past persecution in [his] country based on a protected ground." *Id.* (quotation omitted). Second, if the alien does not establish past persecution, he bears the burden of showing that it is more likely than not that (1) he would be persecuted in the future on account of one of the five enumerated grounds; and (2) he could not avoid this future threat to his life or freedom by relocating, if under all the circumstances it would be reasonable to expect relocation. *Id.*, citing 8 C.F.R.

9

§ 208.16(b)(2). Neither the INA nor the regulations define "persecution," but this Court has indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation . . . [m]ere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations omitted).

The IJ did not err in denying Meletz's claim for withholding of removal under the INA, because Meletz failed to show that the persecution he allegedly suffered in Guatemala was inflicted on account of one of the protected grounds. 8 U.S.C. § 1231(b)(3). In fact, Meletz testified that he believed his attackers were sent by his former boss who wanted him to return to work. Meletz presented no testimony regarding his political opinions and, although he mentioned that he was Mayan, he never asserted that any of the three encounters he described occurred as a result of his Mayan heritage. Additionally, the only evidence indicating that Meletz would suffer persecution in the future was Meletz's testimony that certain unidentified individuals asked his brother when Meletz would be returning to Guatemala. Meletz did not know the identity of these individuals and there was no evidence indicating that these individuals would harm Meletz. Moreover, Meletz's family continues to reside safely in Guatemala and Meletz failed to show that he could not relocate to another area of Guatemala. *Tan*, 446 F.3d at 1375; 8 C.F.R. § 208.16. Because Meletz failed to show that he would, more likely than not, be

10

persecuted on the basis of a protected ground if he returned to Guatemala, the IJ correctly denied withholding of removal relief under the INA. Accordingly, we dismiss Meletz's petition for review to the extent that he attempts to challenge the IJ's denial of asylum and CAT relief, and we deny his petition for review to the extent that he challenge the IJ's denial of withholding of removal.

**DISMISSED IN PART, DENIED IN PART.**