[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 15, 2010
JOHN LEY
CLERK

No. 09-15959
Non-Argument Calendar
_____

Agency No. A098-239-767

QIANG WANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 15, 2010)

Before BARKETT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Qiang Wang filed an application for asylum and withholding of removal on

the ground that he feared persecution and torture for violating and resisting

China's population-control policies. An immigration judge denied his asylum

application as untimely and denied his requests for withholding of removal under

the Immigration and Nationality Act (INA) and the Convention Against Torture

(CAT) on the merits. The Board of Immigration Appeals (BIA) dismissed his

subsequent appeal. Wang seeks judicial review of these decisions by way of

petition, which we dismiss in part and deny.

I

In 1999, Wang left China and illegally entered the United States. In 2008,

after the Department of Homeland Security initiated proceedings to have him

removed from the country, Wang filed an application for asylum and withholding

of removal under the INA and the CAT. Wang claimed that in 1990, his pregnant

wife had drowned in a river during an attempt to escape from government officials

enforcing a prohibition on unregistered pregnancies.[1] Wang called one of the

officials responsible for her death a barbarian and filed an official complaint about

the incident. When another "family-planning" official later came to his house,

Wang's refusal to pay a fine for the pregnancy led to a violent confrontation. In

anticipation of his arrest, Wang escaped to a nearby city, where he lived for nine

_____

[1] Wang's traditional Chinese marriage was not officially recognized because the couple did not (and, according to Wang, could not) register it with the appropriate authorities.

2

years until leaving the country. Although his older brother told him that the officials came looking for him every few days, they never found him.

Once in the United States, Wang began dating another Chinese immigrant, and despite the couple's inability to obtain a marriage license, Wang considers her his wife. The couple had a child in 2008, and they also live with the wife's son from a previous marriage in China. Wang testified that he fears sterilization and other persecution in China on account of his resistance to China's family-planning policies, his failure to pay the fine for his first wife's unregistered pregnancy, and his new wife's decision to have a second child with him.

II

An immigration judge (IJ) determined that Wang's application for asylum was untimely because it had not been "filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The BIA agreed with the IJ. Wang argues that the IJ violated his constitutional right to due process by failing to consider whether the 2008 birth of his child was a changed circumstance sufficient to justify his delay in applying for asylum. *See id.* § 1158(a)(2)(D).[2] The Attorney General responds that we must reject Wang's due-

---

[2] Although we lack jurisdiction to review ordinary determinations regarding the timeliness of an asylum application, 8 U.S.C. § 1158(a)(3), we may nevertheless consider constitutional claims and questions of law, *id.* § 1252(a)(2)(D).

process claim because he had no protected liberty interest in asylum.  *Cf. Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1341–42 (11th Cir. 2003) ("To establish due process violations in removal proceedings, aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial prejudice.").

The Attorney General correctly notes that asylum is a form of discretionary relief.  *See* 8 U.S.C. § 1158(b)(1)(A) ("[T]he Attorney General *may* grant asylum to an alien . . . ." (emphasis added)).  And it is true that "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest."  *Garcia v. Att'y Gen. of the United States*, 329 F.3d 1217, 1224 (11th Cir. 2003).  Nevertheless, "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  And "Congress and the executive have created, at a minimum, a constitutionally protected right to petition our government for political asylum."  *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1038 (5th Cir. Unit B 1982).[3]  We therefore turn to the merits of Wang's claim.

"Due process requires that aliens be given notice and an opportunity to be heard in their removal proceedings."  *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138,

---

[3] We are bound by decisions issued by Unit B panels of the former Fifth Circuit.  *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

1143 (11th Cir. 2010). Wang's contention that the IJ failed to consider the birth of his child as a changed circumstance is, at base, a claim that the IJ denied him a "full and fair hearing," *Ibrahim v. U.S. Immigration & Naturalization Service*, 821 F.2d 1547, 1550 (11th Cir. 1987). But although the IJ had an obligation to give reasoned consideration to Wang's claims and the evidence supporting them, we do not require immigration judges to address each argument and piece of evidence separately. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006).

Here, the IJ duly noted the birth of Wang's child and determined that his asylum application was still untimely. Insofar as the Constitution is concerned, Wang thus received the reasoned consideration to which he was entitled. Having disposed of Wang's due-process claim, we lack jurisdiction to review the BIA's untimeliness determination. 8 U.S.C. § 1158(a)(3). We therefore dismiss the petition to the extent it requests judicial review of the decision denying Wang's application for asylum.

## III

In considering Wang's claims for withholding of removal, we review both the BIA's decision and those parts of the IJ's decision adopted in its opinion. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We review

any legal conclusions *de novo*, but we may not reject factual findings unless they are so unsupported by evidence that the record compels it. *Id.* at 1350–51.

Wang is only entitled to withholding of removal under the INA if his "life or freedom would be threatened" in China because of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). In other words, he must demonstrate that if he is removed to China, it is more likely than not that he will be persecuted on account of one of those protected grounds. *Tan*, 446 F.3d at 1375. One way to satisfy this burden is to prove past persecution, which gives rise to a rebuttable presumption that future persecution is more likely than not. *Id.* For the purposes of this determination,

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42).

Wang argues the BIA erred by finding that he was not likely to be persecuted if removed to China. He first claims that he suffered past persecution for his "other resistance to a coercive population control program" after

6

complaining about his first wife's death. Yet regardless of whether Wang's conduct was "other resistance," he has not demonstrated that he was persecuted for it. Because he was only "fined and threatened with arrest, but was neither detained nor physically injured during his encounter with the family planning officials," Wang "suffered no harm amounting to persecution." *Lin v. U.S. Att'y Gen.*, 555 F.3d 1310, 1316 (11th Cir. 2009).

Wang also argues that he is likely to be sterilized or otherwise persecuted in China for violating its family-planning policies. His purported violations include "reproductive behavior" outside a legal marriage, his failure to pay the fine for his first wife's unregistered pregnancy, and having two children—namely, his own child and his new wife's son from her previous marriage.[4]

We are mindful of our deferential standard of review for the BIA's factual determinations, and the record here does not compel us to reject its finding that Wang failed to establish a sufficient likelihood of future persecution. First, we agree with the BIA's determination that Wang is unlikely to be held accountable for his wife's son from a previous marriage because he has neither legally married the mother nor adopted the child. Second, although family-planning officials continued to look for him until he left China, Wang lived unmolested for nine

---

[4] That Wang's new wife has two biological children is of no consequence here; we will not impute her possible violations of China's population-control program to him.

7

years in a city only a short distance from the place where he had violated local population-control rules. Finally, the State Department reports submitted to the IJ indicate that the typical response to a violation of China's population-control program in Fujian Province, where Wang lived, is economic sanctions. Although "extraordinarily severe" fines may amount to persecution in some circumstances, *In re T—Z—*, 24 I. & N. Dec. 163, 171 (BIA 2007), Wang has presented no evidence that the fines he might face would subject him to "severe economic disadvantage," *id.* at 173. Without that evidence, we cannot reject the BIA's finding that Wang would not be likely to face persecution in China.

That leaves only Wang's CAT claim for consideration. But because he mentions that claim only in the procedural-history section of his brief—and without any substantive discussion—he has abandoned it. *See Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1330 n.1 (11th Cir. 2009). At any rate, an alien who fails to satisfy the statutory requirements for withholding of removal under the INA rarely qualifies for CAT relief. *Compare* 8 C.F.R. § 1208.16(b)(2) ("An applicant . . . may demonstrate that his or her life or freedom would be threatened in the future in a country if he or she can establish that it is more likely than not that he or she would be persecuted . . . ."), *with id.* § 1208.16(c)(2) ("The burden of proof is on the applicant for withholding of removal under [the CAT] to establish that it is

8

more likely than not that he or she would be tortured if removed to the proposed country of removal."). Because the record does not compel a finding that Wang is likely to be persecuted in China, we cannot conclude that he is likely to suffer torture covered by the CAT. *Cf. id.* § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.").

IV

Because we lack jurisdiction to consider Wang's asylum claim, we dismiss that part of his petition. We deny his requests for withholding of removal.

**PETITION DISMISSED IN PART and DENIED IN PART.**