[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 29, 2010
JOHN LEY
CLERK

No. 10-10478
Non-Argument Calendar

_____

Agency No. A088-744-367

GERMAN DARIO ROMERO VARGAS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 29, 2010)

Before TJOFLAT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Petitioner is a native and citizen of Colombia, S.A.  He was admitted to the

United States as a non-immigrant on May 31, 2001, with authorization to remain

until October 15, 2001. He stayed beyond that period and the Department of Homeland Security ("DHS") initiated removal proceedings. An Immigration Judge ("IJ") ordered his removal and the Board of Immigration Appeals ("BIA") upheld the IJ's decision. He now petitions this court for review. The brief he filed in support of his petition raises one issue: whether substantial evidence supports the BIA's determination that the IJ properly denied his application for withholding of removal under the Immigration and Nationality Act ("INA").[1]

The substantial-evidence test is highly deferential and the BIA's decision will be affirmed if supported by reasonable, substantial, and probative evidence based upon the record as a whole. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under this test, we will reverse the BIA's decision only if we find that the record compels a contrary conclusion, not merely that the record supports one. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004). In sum the test is highly deferential, and we review "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.*

An alien may establish that he is entitled to withholding of removal in two ways, either by demonstrating past persecution or a likelihood of future persecution based upon a protected ground, namely, race, religion, nationality,

---

[1] Petitioner's brief concedes petitioner's eligibility for asylum and does not challenge the BIA's denial of protection under the Convention Against Torture. These issues are accordingly abandoned. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n. 2 (11th Cir. 2005).

membership in a particular social group, or political opinion. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006). If the alien establishes past persecution, a rebuttable presumption arises; it is assumed that he would suffer future persecution if returned to his country. The burden then shifts to the government to show that conditions in the country have changed or that the alien could avoid future persecution by relocating within the country. *Id.* If the alien cannot show past persecution, then to be entitled to withholding of removal he must demonstrate that, if returned to his country, "it is more likely than not that [he] would be persecuted on account of" a protected ground. *Id.* (internal quotation marks omitted). The alien cannot meet this burden if he could avoid persecution by relocating to another part of his country. *Id.*

Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotation marks omitted). To illustrate, in *Sepulveda*, menacing phone calls and threats, coupled with a bombing at the restaurant where the alien worked, did not compel a finding of persecution directed at the alien because of a protected ground. Similarly, in *Djonda v. U.S. Att'y Gen.*, we rejected a claim of persecution where the alien, in addition to receiving threats, was detained at a police station for 36 hours and was kicked and beaten with a belt, suffering multiple scratches and bruises. 514 F.3d 1168, 1171, 1175 (11th Cir. 2008); *see also Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir.

2009) (concluding that no persecution existed where the petitioner was arrested for participating in a student demonstration, interrogated and beaten for five hours, detained for four days, and monitored by authorities after his release); *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289-91 (11th Cir. 2006) (concluding that an alien did not suffer persecution where authorities detained him for five days, forced him to watch re-education materials, made him stand in the sun for two hours, and after his release, monitored him and occasionally searched his residence).

On the other hand, we upheld a persecution claim where the alien received numerous death threats, was dragged by her hair out of a car and beaten, had her groundskeeper tortured and killed by attackers looking for her, and was further kidnaped and beaten before being rescued by government forces. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008-09 (11th Cir. 2008). Similarly, we agreed that the alien suffered persecution where he received numerous death threats over an 18-month period and was twice physically attacked, including having his nose broken with the butt of a rifle. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257-58 (11th Cir. 2007); *see also Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211, 1217 (11th Cir. 2007) (accepting a persecution claim where petitioner suffered "numerous beatings, arrests, searches, and interrogations" and spent 15 days in detention where he was "deprived of food, beaten, and threatened at gunpoint").

In his asylum application, petitioner sought withholding of removal based on persecution he said he had suffered at the hands of the Revolutionary Colombian

4

Armed Forces ("FARC") on account of his political opinion. He stated that, in 1987, his brother, Carlos, joined a political party known as the Liberal Party. His entire family had been a part of that party, yet it was not until his brother started visiting different towns in the area of Arauca that he joined the party. He began to travel with his brother and the two of them would campaign together. He became a spokesperson for the group at his university and feared harm from FARC/guerillas because of his political opinion. In the supplement to his application, petitioner stated that as he continued campaigning, he noted that the FARC were displacing people throughout the country.

Petitioner asserted that he began receiving threats from the FARC after he agreed to travel to Arauca in 1998. After his classes, he found his car had been scratched and the windows had been broken. He was told to stop working against the guerillas. Days later, he and others attempted to travel to Villavicencio but the FARC set up a road block and detained three people. He believed that the FARC knew his group's itinerary. Later, when they traveled to Villavicencio, the FARC destroyed the stage his group had set up and then attempted to assassinate the mayor. His group left town the next day. He stated that when he returned to his parents' home from his trip to Villavicencio, he learned that his family had received a call informing them that he and his brother were killed in Villavicencio. He returned to school and graduated.

At some point, a group drove by his parents' home, shot out some windows

5

and warned that next time several people would be shot. Days later, he found that someone had taken the air out of his tires and had done the same to Carlos's car. He was told to leave the country and informed that if he returned to Arauca, his brother would be killed.

Petitioner claimed that he did not seek asylum upon his entry into the United States because he was "distancing himself from that traumatic situation," "tried to forget everything" and "allowed time to pass to see if [he] could achieve something here."

At the close of petitioner's removal hearing, the IJ found petitioner's testimony to be vague and non-specific regarding his claimed participation in the Liberal Party. For example, he was unable to provide specific dates or examples of his political activity. The IJ noted that in his asylum application, he discussed "campaigns" and "shar[ing] his political ideals with his peers," but neither in his application nor in his testimony did he offer information regarding when he performed these activities, where he went, what he did, or with whom he met. The IJ also noted a lack of evidence indicating that the harms petitioner and his family purportedly suffered either rose to the level of persecution or were perpetrated on account of a protected ground. Petitioner's parents and siblings have continued to live in Colombia without incident. As for petitioner, after living eight years in the United States, it is not more likely than not that he would suffer persecution if returned to Colombia—especially in light of the fact that he was not a high profile

6

target for the FARC.  In short, the IJ concluded that petitioner had shown neither past persecution nor a well-founded fear of future persecution.

The record in this case fully supports the agency's denial of petitioner's application for withholding of removal.  The petitioner for review is, accordingly, DENIED.