[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13665
Non-Argument Calendar
_____

Agency No. A073-207-940


DE SOON LIN,
a.k.a. Ji Shun Lin,

                                                                Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 20, 2015)

Before HULL, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner De Soon Lin seeks review of the Board of Immigration Appeals's ("BIA") order, affirming the Immigration Judge's ("IJ") denial of his second motion to reopen his exclusion proceedings.  After review, we deny the petition for review.

## I.  Background

Petitioner, a native and citizen of China, arrived in the United States in February 1994 and applied for admission as a returning Japanese student with an F-1 visa.  Because he lacked a valid entry document and had willfully misrepresented a material fact, he was briefly detained and placed in exclusion proceedings to determine whether he was admissible to the United States.  Despite the hearing notice being sent to the address Petitioner provided upon his release from detention, Petitioner failed to appear for the August 1994 hearing, and the IJ ordered him excluded *in absentia*.

Some thirteen years later, in July 2007, Petitioner filed a *pro se* motion to reopen his exclusion proceedings based on China's family-planning policy.[1] Petitioner contended that he had violated this policy by having two children while living in the United States.  If returned to his home in Fujian Province, China, he argued that he would be arrested, forcibly sterilized, and fined for this violation.

---

[1]  While Petitioner asserted in his motion that he had previously applied for asylum based on his resistance to China's family-planning policy, his asylum application had been denied, and he was then ordered removed in August 1994, there is no evidence in the record that reflects that he had in fact filed an asylum application in 1994.

2

The IJ denied Petitioner's motion to reopen because it was untimely and he had not established *prima facie* eligibility for asylum.

In May 2013, Petitioner filed a second motion to reopen based on changed country conditions regarding China's family-planning policy. Petitioner argued that new evidence showed that Chinese citizens with two or more U.S.-born children would be forcibly sterilized if returned to China and that there had been a recent increase in forced abortions and sterilizations in his region of China. He also argued that his evidence established that he was *prima facie* eligible for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT") based on his violation of China's family-planning policy.

In support of his motion, Petitioner submitted an affidavit in which he asserted that he had not received any hearing notice from the Immigration Court that, in 1994, had issued the *in absentia* order based on Plaintiff's failure to appear. He also stated that, if he returned to China, he would bring his girlfriend and children with him. Because Chinese authorities would then notice that he had two children who were born less than four years apart, he feared that he would be forcibly sterilized and heavily fined.[2]

Petitioner also submitted, among other things: (1) three

---

[2] According to Petitioner, in his hometown in China, couples whose first child was a girl (as was Petitioner's) could apply for a birth permit to have a second child after waiting four years.

affidavits/statements (dated October 2006, September 2009, and July 2010, respectively) from Chinese nationals with foreign-born children who were sterilized upon their return to China; (2) documents from a hearing before Congressman Tom Lantos' Human Rights Commission in November 2009, during which several organizations and witnesses provided testimony regarding 16 cases of coercive family planning; (3) U.S. government reports from January and April 2007 and October 2009 discussing China's household registration requirements for foreign-born children; (4) the State Department's 2009 Country Report on China; (5) excerpts from the Congressional-Executive Commission on China's 2009 and 2010 Annual Report; (6) a review and evaluation of the State Department's 2007 Profile of Asylum Claims and Country Conditions in China by Dr. Flora Sapio, a guest lecturer of Contemporary Chinese Studies at a German university; and (7) notices from various local governments within China regarding the implementation of China's family-planning policy.

The IJ denied Petitioner's motion, and Petitioner appealed this decision to the BIA. The BIA affirmed the IJ's decision. The BIA agreed with the IJ that the motion to reopen was both time-barred and number-barred. But because the BIA also determined that Petitioner had submitted some evidence of changed-country conditions, the time and number bars did not apply. Nonetheless, the BIA held that Petitioner's evidence was insufficient to establish his *prima facie* eligibility for

4

asylum, withholding of removal, and CAT relief.  The BIA found that Petitioner

had not demonstrated that Chinese citizens removed from the United States had

been forcibly sterilized or that there was a reasonable probability that he would

subjected to fines or other economic harm that rose to the level of persecution.

The BIA also denied Petitioner's motion to reopen as a matter of discretion.  The

BIA noted that Petitioner had been "flouting his exclusion order for more than 20

years" and he had waited "more than 4 years after the most relevant alleged change

in country conditions" to file his second motion to reopen.

## II.  Discussion

We review the denial of a motion to reopen for an abuse of discretion.  *Jiang*

*v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009).  We will only find that

the BIA has abused its discretion if its decision was arbitrary or capricious.  *Id.*

Factual findings are reviewed for substantial evidence, which requires "reasonable,

substantial, and probative evidence."  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283-

84 (11th Cir. 2001).  We reverse a finding of fact only if the record compels a

reversal.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009).

Generally, an alien may file only one motion to reopen, which must be filed

within 90 days after the final removal order.  8 U.S.C. § 1229a(c)(7)(A), (C)(i); 8

C.F.R. § 1003.23(b)(1).  However, these time and number limitations do not apply

if the alien can show "changed country conditions arising in the country of

5

nationality." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(i). The BIA may deny a motion to reopen because: (1) the alien failed to establish a *prima facie* case; (2) the alien failed to introduce evidence that was material and previously unavailable; or (3) the BIA determined that, despite the alien's statutory eligibility for relief, he is not entitled to a favorable exercise of discretion. *Al Najjar*, 257 F.3d at 1302. An alien seeking to reopen proceedings bears a "heavy burden" to show that the new evidence would likely change the outcome of the case. *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006).

To qualify for asylum or withholding of removal, an applicant must establish that he has a well-founded fear of future persecution if removed to his home country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1), and 1231(b)(3). A person who has a well-founded fear that he will be forcibly sterilized or subjected to persecution for his refusal to undergo such a procedure is deemed to have a well-founded fear of persecution on account of his political opinion. *Id.* § 1101(a)(42)(B). To establish *prima facie* eligibility for CAT relief, the petitioner must show that it is more likely than not he would be tortured if removed to the designated country of removal. 8 C.F.R. § 1208.16(c)(2).

As to its review of a case, the BIA is not required to discuss in its opinion every piece of evidence presented. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374

6

(11th Cir. 2006).  Where the BIA has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.  *See id.*  Rather, the BIA must "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."  *See id.*

Although Petitioner argues that the BIA abused its discretion in denying his motion to reopen because the BIA failed to consider all of the evidence he submitted, the record shows that the BIA noted that Petitioner submitted some evidence of changed country conditions, but that such evidence did not demonstrate his *prima facie* eligibility for relief.  Because the BIA adequately explained the decision, it was not required to provide a detailed explanation about how the affidavits and reports on country conditions in China did not support Petitioner's claim that he had established *prima facie* eligibility for relief.  *See id.*

Moreover, the BIA did not abuse its discretion by denying Petitioner's motion to reopen based on its conclusion that Petitioner's evidence did not establish his *prima facie* eligibility for relief.  First, the BIA's finding that Petitioner had not shown that, as a removed Chinese citizen, he would be forcibly sterilized was a decision supported by substantial evidence.  The record includes evidence indicating that forced sterilizations are not common in Fujian Province.

Specifically, Dr. Sapio's report explained that the United States government had concluded in the 2007 State Department Profile that sterilization is not practiced coercively and that no forced sterilizations took place in Fujian Province. Furthermore, the 2009 State Department Country Report reported that IUDs and female sterilizations accounted for 80% of all birth-control methods used, and abortions accounts for some of the rest, indicating that the vast majority of coercive measures would not apply to Petitioner.

The record also suggests that Petitioner's children, who are United States citizens, may not be counted for birth planning purposes upon their return to China. A 2006 letter from the Fujian Province Population and Family Planning Commission to the United States Consulate General states that a U.S.-born child by a resident of China would not be counted for family planning purposes if the child's permanent residency is not established when the child returns to China. This letter further stated that, under Fujian Province regulations, there were no forced sterilizations. Moreover, the three affidavits Petitioner submitted represent only personal experiences of individual residents of different locations within Fujian Providence rather than evidence of a province-wide practice of forced sterilization. Finally, as the 2010 Congressional-Executive Commission of China report explains, if coercion is carried out by local officials, they do so in violation of Chinese law.

8

Second, the record does not compel a finding that Petitioner faced a reasonable probability of economic persecution.  While Petitioner asserted that he would be fined for his violations of China's family-planning policy, the evidence he submitted does not demonstrate that he would be reduced to an "impoverished existence" in China.  *See Wu v. U.S. Att'y Gen.*, 745 F.3d 1140, 1156 (11th Cir. 2014) (holding the persecutory acts may constitute economic persecution if they cause "severe economic disadvantage" to the individual subject to removal, considering his net worth, his sources of income, and the condition of the local economy) (citing *Matter of T-Z-*, 24 I. & N. Dec. 163, 173-74 (BIA 2007)). Indeed, Petitioner has submitted no evidence of his net worth, sources of income, or conditions of the economy in Fujian Province.  Rather, he does nothing more than make the general assertion that he would be heavily fined.  Consequently, we cannot say that the BIA acted arbitrarily and capriciously in affirming the denial of Petitioner's second motion to reopen based on the failure to establish *prima facie* eligibility for relief.

In the alternative, the BIA indicated that it would also deny Petitioner's motion to reopen as a matter of discretion.  In doing so, the BIA accurately noted that Petitioner had flouted American law by remaining in the United States for 20 years after being ordered excluded.  Further, he delayed filing his second motion to reopen until several years after the most recent alleged change in country

conditions.  Petitioner has never explained why he delayed filing his second motion to reopen.  As to the 1994 exclusion hearing that he failed to attend, he states, without elaboration, that he had not received notice of his exclusion hearing. Yet, it is undisputed that Plaintiff knew exclusion proceedings were ongoing against him and that notice would be sent to the address in his parole records.  Still, he never challenged the *in absentia* order on the basis that he had not received notice.

Thus, we conclude that the BIA's decision to deny Petitioner's motion to reopen as a matter of discretion was not arbitrary and capricious.  Accordingly, the BIA did not abuse its discretion in denying Petitioner's motion to reopen, even if he were *prima facie* eligible for relief from removal.  *See Al Najjar*, 257 F.3d at 1302.

For the foregoing reasons, we deny the petition for review.

**PETITION DENIED.**

10