[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12397
Non-Argument Calendar
_____

Agency No. A087-355-730


CARLOS EMILIO NASSAR-ARELLAN,
VICSOBE DEL VALLE BERMUDEZ DE NASSAR,
VICTOR EMILIO NASSAR BERMUDEZ,
DANIELA MICHELLE NASSAR BERMUDEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 15, 2016)

Before ED CARNES, Chief Judge, WILSON and ROSENBAUM, Circuit Judges.

PER CURIAM:

Carlos Nassar Arellan and his family are natives and citizens of Venezuela who came to this country on nonimmigrant visas. When they overstayed their visas, the federal government initiated removal proceedings against them. Conceding removability, Arellan applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), naming his wife, daughter, and son, Victor, as derivatives. An immigration judge (IJ) denied his applications, offering several specific, cogent reasons for not crediting key supporting evidence. After the Board of Immigration Appeals affirmed the IJ's decision, Arellan and his family members appealed. We lack jurisdiction to consider Victor's appeal because the Board has reopened Victor's removal proceedings. The other appeals from Arellan and his family members fail because the factual findings they contest are supported by substantial evidence.

In a statement supporting his application, Arellan recounted that, during his time in Venezuela, the Bolivarian Circles, a group loyal to former Venezuelan president Hugo Chavez, repeatedly beat and threatened him because of his involvement with Primero Justicia, a pro-democracy political party. Along with his statement, Arellan submitted a number of documents, including several medical records, ostensibly from Venezuelan hospitals, reflecting treatment Nassar claimed he received after being attacked by the Bolivarian Circles.

2

Barbara Branks, the owner of La Gringa Professional Immigration Services, prepared Arellan's application and assembled many of the supporting materials. After Arellan submitted his application, Branks pleaded guilty to procuring fraudulent medical documents and letters from political parties so that her clients could obtain immigration benefits to which they were not entitled. According to Branks's plea agreement, a federal investigation had revealed that her clients knew she was procuring the fraudulent documents and gave her the information necessary to falsify the documents. Branks's plea agreement was part of the record before the IJ.

The government forensically tested some of Arellan's supporting documents. The forensics lab reported that only one of the documents was authenticable, and that one was fraudulent. Arellan later submitted another medical record, but then tried to withdraw it. He initially said that the decision to withdraw the document was his lawyer's and that he did not know what prompted it. Later, however, he told an immigration officer that he had decided to withdraw the document because, although it was accurate, he was unsure of its provenance and, in light of Branks's guilty plea, he did not trust documents he did not obtain on his own.

After reviewing the record and hearing testimony from Arellan, the IJ denied Arellan's applications for asylum and withholding of removal. She found him not

credible because of discrepancies between his testimony and written statement, and because he submitted at least one fraudulent medical record and another medical record of questionable validity.  Holding that Arellan's other, credible evidence did not establish the type of well-founded fear of persecution required for granting asylum or withholding removal, the IJ denied his applications for those forms of relief.  She also denied his application for relief under the CAT because the CAT covers only torture and Arellan had not submitted any evidence to support a finding that he or his family had been tortured in Venezuela or likely would be tortured if returned there.

Arellan appealed the IJ's decision to the Board, which affirmed.  It held that the IJ's adverse credibility finding was not clearly erroneous and determined that Arellan had not otherwise established his claim for asylum or withholding of removal.  It also agreed with the IJ that Arellan had not shown that he or his family would be subject to torture upon being removed to Venezuela.  As part of his appeal, Arellan submitted State Department reports and news articles about Venezuela's political climate, but the Board declined to consider those documents because they were never put in evidence before the IJ.

Arellan and his family appealed the Board's dismissal of his appeal of the IJ's decision.  Since then, the government has reopened Victor's removal proceedings, meaning there is no longer a final order of removal against him.  We

4

may only review an order of removal if it is a final order of removal. See 8 U.S.C. § 1252(a)(1). As there is no longer a final order of removal against Victor, we lack jurisdiction to review his appeal.

The government has not reopened removal proceedings for any of Arellan's other family members, so we have jurisdiction to consider their appeals, all of which are derivative of Arellan's. Notably, Arellan's appeal does not argue that the Board erred in dismissing his application for relief under the CAT. Since claims not raised on appeal are forfeited, see Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005), he has forfeited his claim for relief under the CAT.

We are thus left to consider Arellan's applications for asylum and withholding of removal. To qualify for asylum, an applicant must establish that he is a refugee. See 8 U.S.C. § 1158(b)(1). That means, among other things, the applicant must establish a well-founded fear that, if returned to his country of origin, he will be persecuted. Id. at § 1101(a)(42)(A). An applicant who cannot meet the "'well-founded fear' standard for asylum" is "generally precluded from qualifying for withholding of [removal]." Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352 (11th Cir. 2009). The IJ determined that Arellan failed to establish a well-founded fear of persecution because his account of events was not credible and his supporting documentation was of dubious reliability. Arellan

5

disputes those fact-findings on two grounds.  First, he argues that the IJ erred in finding he was not credible.  Second, he contends that other evidence in the record, beyond his testimony and the suspect supporting materials, is sufficient to establish that he is entitled to asylum and withholding of removal.  We review an IJ's factfindings to see if they are supported by substantial evidence, but we review de novo an IJ's conclusions of law.  Kazemadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009).  A credibility determination is a finding of fact.  Todorovic v. U.S. Att'y Gen., 621 F.3d 1318, 1323 (11th Cir. 2010).  Whether the record contains evidence establishing that an immigrant is entitled to asylum or withholding of removal is a question of law.

Arellan's argument about the IJ's credibility determination fails because the determination was supported by substantial evidence.  A finding of fact, including a credibility determination, is supported by substantial evidence unless the evidence in the record "compels a reasonable fact finder to find otherwise."  Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230–31 (11th Cir. 2006) (emphasis added).  We will affirm a credibility determination, therefore, so long as an IJ offers "specific, cogent reasons for an adverse credibility finding," and those reasons find support in the record.  Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1049 (11th Cir. 2009).  Thus, we have held that a reasonable fact finder could find an applicant's statement and testimony not to be credible based on just one inconsistency and one

6

omission, at least where the applicant did not provide corroborating evidence to rebut the inconsistency and explain the omission.  See Xia v. U.S. Att'y Gen., 608 F.3d 1233, 1240–41 (11th Cir. 2012).

The IJ gave several specific and cogent reasons for her adverse credibility finding in this case.  Among other things, she noted that Arellan's testimony was at times inconsistent with his written statement and that it omitted numerous details included in his written statement.  For example, Arellan testified to the IJ that, on November 29, 2003, the Bolivarian Circles forcibly took from him Primero Justicia documents and fled with them.  In his statement supporting his applications, however, he said that the Bolivarian Circles ripped the documents up on the scene, rather than fleeing with them.  Arellan's statement also stated that, during the November 29, 2003 incident, the Bolivarian Circles attacked him with tubes and sticks, but his testimony omitted any mention of tubes and sticks.  The IJ further noted that, in addition to those and other inconsistencies and omissions, Arellan submitted at least one fraudulent medical record and offered conflicting explanations for seeking to withdraw a second medical record.  Those reasons adequately support the IJ's adverse credibility determination.  There is no basis for reversing the IJ's findings.

Arellan suggests that the IJ failed to consider all of his supporting documents, but that suggestion is unfounded.  Although the IJ in her decision did

7

not formally address the probative value of each document, there is no requirement that she do so. In rendering a decision, an IJ "is not required to discuss every piece of evidence presented before [her]." Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1376 (11th Cir. 2006). We require only that the IJ have considered all of the evidence in the record. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). Arellan points us to nothing in the record to support an inference that the IJ ignored any of his application materials. The record strongly suggests just the opposite. Before issuing her decision, the IJ thoroughly summarized the record, specifically mentioning many of the pieces of evidence Arellan says she overlooked. She also carefully explained the bases for each part of her decision, citing to several different parts of the record in the process. Under those circumstances, there is no basis for concluding that the IJ failed to consider the entire record in making her decision.

Disregarding Arellan's discredited testimony, the record has no evidence establishing that Arellan is entitled to asylum or withholding of removal. An applicant for asylum or withholding of removal must establish, among other things, that he was subjected to "past persecution on account of a statutorily listed factor [such as his political views]," or that he has "a 'well-founded fear' that the statutorily listed factor will cause future persecution." 8 C.F.R. § 208.13(a), (b);

8

Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).  Arellan has not carried that burden.

Arellan contends that the State Department reports and news articles he submitted satisfied his burden of showing persecution.  The Board, he points out, did not consider those documents in its decision.  The reason it did not is that Arellan never submitted the reports and news articles to the IJ.  As an appellate body, the Board may not consider new evidence and engage in fact-finding in the course of deciding appeals.  See 8 C.F.R. § 1003.1(d)(1), (d)(3)(iv).  A party seeking to introduce new evidence, like the State Department reports and news articles, requiring new findings of fact must move the Board to remand the case to an IJ.  Id. at § 1003.1(d)(3)(iv).  Arellan never did that.  Like the Board, we may not decide this matter by considering materials outside the administrative record.  See 8 U.S.C. § 1252(b)(4)(A); Najjar v. Ashcroft, 257 F.3d 1252, 1278 (11th Cir. 2001).  And there is no basis in the record justifying reversal of the IJ's and the Board's decisions.

Victor Nassar Bermudez's appeal is **DISMISSED** for lack of jurisdiction.  The Board's order is otherwise **AFFIRMED**.

9