[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11734; 15-13444
Non-Argument Calendar

_____

Agency No. A092-782-022

MOWAFAK SHAHLA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(April 19, 2016)

Before WILSON, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In this consolidated petition for review, Petitioner Mowafak Shahla, a native and citizen of Syria, petitions for review from the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of Petitioner's applications for asylum, withholding of removal, relief under the United Nations Convention Against Torture ("CAT"), and cancellation of removal.  Petitioner also petitions for review of the BIA's denial of his motion to reconsider.  After careful review, we dismiss the petition for review in part, and deny in part.

## I.  BACKGROUND

### A.    Initiation of Removal Proceedings

In September 1993, Petitioner was paroled into the United States, and his status was subsequently adjusted to that of a lawful permanent resident in April 2002.  In June 2013, Petitioner was convicted in the United States District Court for the Middle District of Florida of conspiracy to commit marriage fraud, and two counts of unlawful procurement and/or attempted procurement of United States citizenship.

In June 2014, the Department of Homeland Security served Petitioner with a notice to appear, charging him as removable pursuant to 8 U.S.C. § 1227(a)(1)(A), for being an alien who at the time of adjustment of status was inadmissible for attempting to procure immigration documents by fraud, and 8 U.S.C. § 1227(a)(2)(A)(iii), for being an alien convicted of two or more crimes involving

moral turpitude, after admission, that did not arise out of a single scheme of criminal misconduct.  At a preliminary hearing in July 2014, the IJ sustained the charges in the notice to appear and found Petitioner removable on those grounds.

### B.    Applications for Immigration Relief and Merits Hearing

In August 2014, Petitioner applied for asylum, withholding of removal, and CAT relief, alleging that he would be harmed or killed if he returned to Syria because of his practice of Christianity.  He also applied for cancellation of removal for certain permanent residents, in conjunction with an application for a waiver of inadmissibility under 8 U.S.C. § 1182(h).[1]

The IJ conducted a merits hearing on Petitioner's applications in October 2014.  At the hearing and without objection from Petitioner, the IJ described the facts underlying Petitioner's convictions for marriage fraud and attempted unlawful procurement of United States citizenship as follows.  Petitioner owned a convenience store and asked one of his patrons named Victoria if she could help him with his immigration problems by marrying him.  The two married but never lived together, and Victoria dated someone else throughout their marriage. Victoria filed immigration paperwork on behalf of Petitioner and, in return,

---

[1]  Section 1182 of Title 8 of the United States Code—Immigration and Nationality Act ("INA") § 212—offers several types of waivers.  As relevant in the present case, "Section 212(h)(1)(B) of the INA gives the Attorney General the discretion to waive the immigration consequences of certain criminal convictions if a person demonstrates that [his] removal or denial of admission would result in extreme hardship to a U.S. citizen family member."  *Lanier v. U.S. Att'y Gen.*, 631 F.3d 1363, 1365 (11th Cir. 2011).

Petitioner paid Victoria $200 per month for one year, as well as lost wages when she had to attend immigration-related appointments on his behalf.

In 2002, Victoria lied on behalf of Petitioner, which resulted in an IJ waiving a 1997 conviction that Petitioner received for bank fraud, and subsequently adjusting his status to that of a lawful permanent resident. Petitioner applied for citizenship in 2007 based on his fraudulent marriage to Victoria. Petitioner also helped arrange for his two brothers to fraudulently marry United States citizens. In fact, Petitioner paid one of his brother's spouses in exchange for marrying his brother. Petitioner and Victoria later divorced in 2005. He then married Margaret, a Syrian-born United States citizen.

Petitioner testified that he moved to the United States in 1988 and had been a permanent resident since 2002. In 1997, he pled guilty to food stamp and bank fraud charges, but he was permitted to remain in the United States because the IJ waived the fraud conviction and adjusted his status to that of a lawful permanent resident. His adjustment of status was based on his marriage to Victoria. However, he was later convicted of conspiring to commit marriage fraud and attempting to unlawfully procure naturalization based on that marriage.

Petitioner explained that he committed these crimes because he wanted to live in the United States, and he believed that the United States could provide more opportunities for Christians than Syria. He also hoped to aid his brothers, who

4

wanted to work as doctors in the United States. He claimed that he had "learned [his] lesson," admitted that his crimes were a "shortcut," and vowed that he would not commit any future crimes. Petitioner's current wife Margaret was a United States citizen, as were his three children who were ages 2, 8, and 10. Because he was a Christian, he was scared of returning to Syria because Islamic extremists presented a danger to Christians in Syria.

The IJ also heard testimony from both Petitioner's friend and his priest, Father Mouris Amsih. Of relevance, Father Amsih testified that he had recently traveled to Syria for two days. He wore his clerical garb during the visit, and the Syrian military escorted him and his fellow bishops around the country. He explained that conditions in Syria were not safe for Christians, as bishops and other Christians were being attacked and kidnapped.

## C.   IJ Decision

The IJ denied Petitioner's applications for relief and ordered him removed to Syria. The IJ first determined that Petitioner was not statutorily eligible for cancellation of removal because he had not shown that he had resided continuously in the United States for seven years. Additionally, the IJ determined that even if Petitioner were statutorily eligible, he did not warrant a favorable exercise of discretion. The IJ noted that Petitioner had several positive equities, including that he had been in the United States for 26 years, his wife and children were United

States citizens, and he had ties to the business and church communities. However, these positive factors did not outweigh the negative factors in Petitioner's case, which included his criminal history, the nature of his criminal convictions, and his lack of remorse. The IJ also denied Petitioner's application for a waiver of inadmissibility.

Next, the IJ denied Petitioner's applications for asylum and withholding of removal. Specifically, the IJ determined that Petitioner's convictions for conspiring to commit marriage fraud and knowingly attempting to illegally procure citizenship were particularly serious crimes because they were offenses committed against the interests of the United States government. Petitioner was also the primary orchestrator of the fraudulent scheme, which was perpetuated over the course of ten years.

Finally, the IJ determined that Petitioner was not eligible for deferral of removal under CAT because he did not show that it was more likely than not that he would be tortured if he were removed to Syria. Although the country conditions evidence showed that life in Syria was difficult and that a pattern of human rights violations existed, the IJ concluded that there was not enough evidence to show that Petitioner would be singled out for torture. Moreover, the IJ explained that the Syrian government was aware of the danger faced by Christians in Syria, as

6

evidenced by Father Amsih's testimony that the Syrian military escorted him around the country.  Accordingly, the IJ found Petitioner ineligible for any relief.

### D.    BIA Decision

The BIA affirmed the IJ's decision, agreeing that Petitioner was not eligible for cancellation of removal, asylum, withholding of removal, or CAT relief.[2]  As to cancellation of removal, the BIA determined that Petitioner had shown that he was continuously present in the United States for seven years.  Nevertheless, he was still ineligible for this form of relief as a matter of discretion because Petitioner's convictions were not outweighed by the positive equities in his case.  The BIA further rejected Petitioner's argument that the IJ was biased in making the cancellation of removal determination because the record showed that Petitioner was given a fair hearing, as he had the opportunity to present evidence and respond to questioning about his criminal convictions.  The BIA also affirmed the IJ's finding that Petitioner was barred from asylum and withholding of removal because he was convicted of particularly serious crimes.  Finally, the BIA concluded that the IJ did not clearly err in determining that Petitioner had not met his burden of establishing that it was more likely than not that he would be tortured by or at the acquiescence of a public official or someone acting in an official capacity.

---

[2]  The BIA did not address the IJ's denial of Petitioner's waiver of inadmissibility because Petitioner did not challenge that determination on appeal.

### E.    Motion to Reconsider

Petitioner later requested that the BIA reconsider its denial of his applications for relief.  First, he asserted that the BIA could not properly decide his appeal because significant portions of the record were missing and those portions of the record revealed improper comments made by the IJ.  Second, he asserted that the BIA erred by not analyzing whether he was entitled to a favorable exercise of discretion under the totality-of-the-circumstances standard.  Third, the BIA erred by concluding that he was convicted of particularly serious crimes, and was therefore ineligible for asylum and withholding of removal.  Finally, the BIA failed to consider all of the relevant evidence of torture in concluding that Petitioner was not entitled to deferral of removal under CAT.

### F.    BIA Denial of Motion to Reconsider

The BIA denied Petitioner's motion to reconsider.  The BIA first stated that it had already addressed Petitioner's argument that the IJ was biased in its previous decision.  Moreover, it was not clear from the record that portions of the transcript were missing, and Petitioner had not provided any corroboration for his allegations that a clerk at the immigration court informed him that some portions of the proceedings were not recorded.  But in any event, the BIA did not find sufficient evidence of bias based on the comments Petitioner alleged the IJ had made during the purportedly missing portions of the transcript.  Finally, the BIA declined to

8

grant the motion to the extent Petitioner requested reconsideration of the BIA's order finding Petitioner ineligible for asylum, withholding of removal, CAT relief, and cancellation of removal, based on an error of law or fact that was misapplied or overlooked.

## II.  DISCUSSION

Petitioner raises four arguments on appeal:  (1) the BIA erred by finding that the IJ did not abuse her discretion in denying Petitioner's application for cancellation of removal; (2) the BIA erred by finding that the IJ properly concluded that Petitioner's convictions for marriage fraud and attempted unlawful procurement of United States citizenship were particularly serious crimes, thus rendering Petitioner ineligible for asylum and withholding of removal; (3) the IJ and BIA ignored relevant evidence in the record showing the likelihood of torture in Syria; and (4) the BIA erred by ruling on the merits of Petitioner's case without a full and accurate record.

### A.    Standard of Review

We review only the BIA's decision, except to the extent the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  When the BIA agrees with the IJ's findings or reasoning, we also review the IJ's decision to the extent of that agreement. *Seck v. U.S. Att'y Gen.*, 663 F.3d

1356, 1364 (11th Cir. 2011).  Here, the BIA agreed with the IJ's findings, and also issued its own decision.

We review *de novo* our own subject matter jurisdiction.  *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003).  We review the BIA's denial of a motion to reconsider for an abuse of discretion.  *Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1341 (11th Cir. 2003).  But we lack jurisdiction to review any claim by "an alien who is removable by reason of having committed" two crimes involving moral turpitude, after admission, which did not arise out of a single scheme of criminal misconduct.  8 U.S.C. §§ 1252(a)(2)(C), 1227(a)(2)(A)(ii).  Because the IJ ordered Petitioner removed on this basis, and Petitioner did not challenge this determination before the IJ and BIA, we lack jurisdiction to review Petitioner's final order of removal, except to the extent that Petitioner's arguments fall within the exception of 8 U.S.C. § 1252(a)(2)(D).  *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006) (concluding that we lack jurisdiction to review arguments a petitioner failed to raise before the BIA and IJ).  Notwithstanding the jurisdiction-stripping provisions of § 1252(a)(2)(C), we are permitted to review questions of law and constitutional claims pursuant to § 1252(a)(2)(D).  8 U.S.C. § 1252(a)(2)(D).

We review questions of law *de novo*.  *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006).  Whether the BIA applied the wrong legal standard in

10

making a determination constitutes a legal question. *See Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1197 (11th Cir. 2008).

### B.    Cancellation of Removal

Petitioner's first argument is that the BIA and IJ failed to consider the totality of the circumstances in denying his application for cancellation of removal, including all of the positive equities and Petitioner's explanations for his criminal convictions.

Under 8 U.S.C. § 1229b(a)(1), the Attorney General may cancel the removal of certain permanent residents if the alien:  (1) has been lawfully admitted for permanent residence for not less than five years; (2) has resided continuously in the United States for 7 years after having been admitted in any status; and (3) has not been convicted of an aggravated felony.  8 U.S.C. § 1229b(a)(1).  In addition to the criminal alien jurisdiction-stripping provision of § 1252(a)(2)(C), we also lack jurisdiction to review discretionary judgments related to the granting of cancellation of removal.  8 U.S.C. § 1252(a)(2)(B)(i).

Here, Petitioner does not present a colorable question of law or constitutional claim related to the denial of his application for cancellation of removal.  Indeed, he argues that the IJ and BIA abused its discretion in denying his request for cancellation of removal because the IJ and BIA incorrectly weighed the positive and negative factors present in his case.  This argument does not constitute

a constitutional or legal challenge over which we retain jurisdiction. *See Jimenez-Galicia v. U.S. Att'y Gen.*, 690 F.3d 1207, 1210–11 (11th Cir. 2012) ("We have no jurisdiction to consider 'garden-variety abuse of discretion' arguments about how the BIA weighed the facts in the record."). To the extent Petitioner also attempts to raise a constitutional claim by asserting that the IJ's bias influenced her analysis of the facts of his case, this is merely an abuse of discretion argument couched in constitutional language. *See Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007) ("A petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." (quotations omitted)). We therefore dismiss this portion of the petition for review.

## C.    Particularly Serious Crime Determination

Petitioner next contends that the IJ and BIA erroneously concluded that his convictions for marriage fraud and attempted unlawful procurement of United States citizenship were particularly serious crimes.

An alien convicted of a "particularly serious crime" is statutorily ineligible for asylum and withholding of removal. 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(3). An alien is considered to have committed a particularly serious crime if the alien has been convicted of an aggravated felony and has been sentenced to an aggregate term of at least five years' imprisonment. 8 U.S.C. § 1231(b)(3)(B)(iv). However, when a conviction

12

is not *per se* particularly serious, the IJ is permitted to determine on a case-by-case basis whether the conviction qualifies as a particularly serious crime. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). The IJ is permitted to rely entirely on the elements of the offense, but may also consider additional evidence and "look 'to such factors as the nature of the conviction, the circumstances of the underlying facts of the conviction, [and] the type of sentence imposed.'" *Id.* (alteration in original).

Petitioner's challenge to the IJ and BIA's determination that he was convicted of particularly serious crimes does not raise a colorable question of law. Petitioner asserts that the BIA and IJ would not have found that his marriage fraud convictions were particularly serious crimes if they had properly examined the elements of Petitioner's offenses, the circumstances of his convictions, the type of sentence imposed, and whether the circumstances of the crimes indicated that Petitioner was a danger to the community. Although he couches his argument as a challenge to the BIA and IJ's failure to follow the proper legal framework, he is essentially challenging the weight the IJ and BIA assigned to the evidence in determining that his convictions qualified as particularly serious crimes. Because Petitioner seeks review of the BIA and IJ's discretionary determination, he does not present a legal question over which we retain jurisdiction to review. *See Jimenez-Galicia*, 690 F.3d at 1210–11; *see also Cole v. U.S. Att'y Gen.*, 712 F.3d

13

517, 534 (11th Cir. 2013) (stating that we lack jurisdiction to review the "weight and significance given to various pieces of evidence"). Accordingly, we dismiss this portion of the petition for review.

### D.    Deferral of Removal under CAT

Petitioner next argues that in denying his claim for deferral of removal under CAT, the IJ and BIA ignored objective, documentary evidence showing torture by or with the acquiescence of the Syrian government.

To obtain relief under CAT, an alien must show that it is more likely than not that he would be tortured if returned to his country of removal. 8 C.F.R. § 208.16(c)(2). Because Petitioner is a criminal alien, we may not review any factual allegations Petitioner raises related to whether he faces a clear probability of torture in Syria. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1280 (11th Cir. 2009) ("[W]e may not review the administrative fact findings of the IJ or the BIA as to the sufficiency of the alien's evidence and the likelihood that the alien will be tortured if returned to the country in question."). *But see Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1322 (11th Cir. 2007) (stating that we retain jurisdiction to consider whether an undisputed fact pattern constitutes torture). However, we do have jurisdiction to determine whether the BIA gave reasoned consideration to Petitioner's claims. *See Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1231

14

(11th Cir. 2013) (stating that the question of whether the BIA gave reasoned consideration to a petitioner's application for relief is a question of law).

When determining whether the BIA gave reasoned consideration to a petitioner's claims, we look to whether the BIA "consider[ed] the issues raised and announce[d] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) (quotations omitted).  Although the BIA is required to consider all of the evidence presented, we do not require it to specifically address each claim and piece of evidence submitted by the petitioner. *Id.*  The BIA fails to give reasoned consideration to a claim when it misstates the contents of the record, fails to explain its illogical findings, or supports its decision with an unreasonable basis and does not respond to arguments in the record.  *Id.* at 1375–77.

Here, the IJ and BIA's determination that Petitioner had not shown that it was more likely than not that he would face torture in Syria reflects reasoned consideration.  In support of his argument that the IJ and BIA failed to give reasoned consideration, Petitioner asserts that the IJ and BIA focused on the testimonial evidence, and failed to consider other evidence describing current conditions in Syria.  However, the record does not support this contention.  Although the BIA and IJ considered Father Amsih's testimony that the Syrian

15

military assisted with his travel throughout Syria, the BIA also acknowledged that Father Amsih had stated that conditions were not safe in Syria. Moreover, the record reveals that the IJ and BIA considered the documentary evidence showing that country conditions in Syria were unstable and that civilians had experienced violence. Additionally, the BIA noted that the IJ acknowledged that the evidence showed a pattern of human rights abuses, but concluded that this did not establish that Petitioner would more likely than not suffer torture by or at the acquiescence of the Syrian government. The record is therefore sufficient to show that the BIA did not merely react, but considered the issues raised and the evidence presented by Petitioner. *See Tan*, 446 F.3d at 1374. Thus, we deny the petition for review as to this issue.

### E.    Motion to Reconsider

Petitioner's final argument is that the BIA committed legal error by concluding that there was no evidence to show that the record was incomplete, and by deciding the case on the merits without a full and complete record.

While we assume Petitioner's argument is a challenge to the BIA's denial of his motion to reconsider, we note that it is not entirely clear. Petitioner does not expressly challenge the BIA's denial of his motion to reconsider. Nor does he provide the standard for our review of denials of motions to reconsider, or any of the relevant case law. He has thus arguably abandoned any challenge to that order.

*See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (stating that a petitioner abandons an issue by not raising any argument on it). However, because Petitioner argued in his motion to reconsider that portions of the record were missing, we will assume that Petitioner's argument raising the same issue here is a challenge to the BIA's denial of that motion.

We next address our jurisdiction to review this argument. *Cf. Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1262–63 (11th Cir. 2003) (concluding that § 1252(a)(2)(C) deprived us of jurisdiction (with the exception of constitutional claims) to review a motion to reopen attacking a final order of removal that we lacked jurisdiction to review in the first instance). Because Petitioner's argument—that the BIA erred by ruling on the merits of his appeal without the full and complete record—appears to present a constitutional or legal argument, we have jurisdiction to review it. 8 U.S.C. § 1252(a)(2)(C), (D).

Ultimately, we conclude that the BIA did not abuse its discretion in denying Petitioner's motion to reconsider. A motion to reconsider must "specify the errors of law or fact in the previous order and shall be supported by pertinent authority." 8 U.S.C. § 1229a(c)(6)(C). In denying his motion, the BIA stated that it had already addressed Petitioner's claim that the IJ was biased and was not convinced by it. *See Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329 (11th Cir. 2007) ("[A] motion that merely republishes the reasons that had failed to convince the tribunal

17

in the first place gives the tribunal no reason to change its mind." (quotations omitted)).  Moreover, Petitioner also asserted that the transcript for the hearing that took place on August 28, 2014, was missing, as were portions of the transcript from the merits hearing in October 2014.  However, it is not clear from the record that a hearing actually occurred in August 2014, and Petitioner did not provide any corroboration for his claim that a clerk at the immigration court informed him that the hearing was not recorded.  Although the IJ stated at the preliminary hearing in July 2014 that the parties would reconvene on August 28, 2014, she detailed the procedural history of the case in her final decision denying relief and did not state that a hearing ever took place on that date.  And contrary to Petitioner's assertions, the record does not support his contentions that portions of the transcript for the October 2014 merits hearing were missing.  Accordingly, we cannot say that the BIA abused its discretion in denying Petitioner's motion to reconsider.

## IV.    CONCLUSION

For the above-mentioned reasons, we lack jurisdiction to review Petitioner's arguments that the BIA erred in affirming the IJ's denial of his application for cancellation of removal and the determination that his marriage fraud convictions were particularly serious crimes, which thereby rendered him ineligible for asylum and withholding of removal.  We deny Petitioner's remaining claims.

**PETITION DISMISSED IN PART, DENIED IN PART.**

18